Greg **HARTER**, Plaintiff,

v.

**UNIVERSITY OF INDIANAPOLIS,**
**Defendant.**

No. IP 97–201–C G/H.

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 23, 1998.

Steven Caplin and Kelli Keller, Caplin Pehler Park & Tousley, Indianapolis, IN, for Plaintiff.

Kim F. Ebert and Ariane Schallwig Johnson, Locke Reynolds Boyd & Weisell, Indianapolis, IN, for Defendant.

## ENTRY ON DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

HAMILTON, District Judge.

This case presents an important practical question under the Americans with Disabilities Act (ADA) and the Rules of Professional Conduct for attorneys. The question is whether an attorney for a disabled employee should be disqualified from a lawsuit as a "necessary" witness based on her participation in the "interactive process" between employer and employee to find reasonable accommodations for the employee's disability. The parties and the court have not identified other decisions addressing this problem under the ADA. As explained below, the court concludes that disqualification of plaintiff's attorney is not warranted in this case because she is not a truly "necessary" witness.

### Background

An employer can violate the ADA by failing to provide "reasonable accommodation" to an employee with a disability. 42 U.S.C. § 12112(b)(5)(A). Identifying steps that might reasonably accommodate an employee's disability often requires information both from the employer about its needs and from the employee about his or her abilities and limitations. The Seventh Circuit has explained that the ADA envisions an "interactive process" that requires participation by both the employer and the employee to identify reasonable accommodations. *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir.1996); see also 29 C.F.R. § 1630.2(*o*)(3) (1995) ("informal, interactive process" may be needed to identify precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations); 29 C.F.R. Pt. 1630, App. (interpreting 29 C.F.R. § 1630.9) ("[T]he employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability.").

In this case, plaintiff Greg Harter employed attorney Kelli Keller to advise him and speak for him in that "interactive process" with his employer, defendant University of Indianapolis. After that process broke down, Harter filed suit under the ADA. Keller has continued to represent him in this lawsuit. The university has moved to disqualify both attorney Keller and her entire law firm. The university argues that Keller's role in the negotiations over possible

accommodations has made her a necessary witness at trial. The pretrial aspects of this case were referred to Magistrate Judge John Paul Godich, who granted the motion to disqualify attorney Keller but denied the motion to the extent it sought to disqualify her entire law firm. Pursuant to 28 U.S.C. § 636(b)(1)(A), both parties have filed objections to this decision. The university also has asked the court to reach an issue that Judge Godich did not decide, whether Harter has waived any attorney-client privilege concerning communications with attorney Keller about the accommodation process. As explained below, the court concludes that neither attorney Keller nor her law firm should be disqualified. On the privilege question, the court concludes that Harter, by filing a lawsuit alleging that his employer failed to reasonably accommodate his disabilities, did not waive the attorney-client privilege as to confidential communications that otherwise are protected by the privilege.

## Facts [1]

Plaintiff Harter was employed by the University of Indianapolis as a skilled maintenance employee doing electrical and plumbing work. In June 1994, Harter hurt his back on the job. He continued working with some restrictions. In June 1995, according to Harter, he reinjured himself but continued to work with some lifting restrictions. On August 25, 1995, Harter told the university that he was completely unable to work. He never returned to work. In January 1996, Harter filed for total disability benefits, but later in 1996 he was released to return to work with some physical restrictions after a rehabilitation program. On July 10, 1996, Harter wrote to the head of the university's maintenance department to say that he had been released for work but with significant physical restrictions. His letter referred to the ADA and requested accommodation. Ex. A. On August 1, 1996, the university's treasurer and business manager, Ken Hottell, wrote back to Harter explaining that the university needed current, detailed information about his medical restrictions. Ex. B. That same day, the university sent a letter to Harter's

doctor describing his job duties and asking for specific information about his medical restrictions as applied to his work duties. Ex. C.

The university received a response dated August 12, 1996, from attorney Kelli Keller of the Indianapolis law firm of Caplin Pehler Park & Tousley. Keller wrote that Harter had retained the firm "to advise and represent him regarding the legal problems arising out of his termination by the University." Keller asked the university to direct future communications on non-routine matters through her rather than directly to Harter. The letter (obviously a form letter) also advised the university about other routine aspects of employment litigation and asked for a copy of Harter's personnel file. Ex. D. A lawyer for the university, Mark Sifferlen of the law firm of Baker & Daniels, responded to Keller's letter on August 28, 1996. He wrote that the university had not terminated Harter and was trying to obtain information that would allow him to return to work. He also requested that any communications from attorney Keller be directed to him, but his letter to Keller also urged Harter to communicate directly with the university. Ex. E.

Over the next five months, attorney Keller and attorney Sifferlen exchanged a series of letters concerning Harter's situation. Of particular interest for present purposes are comments in Keller's letter of September 4, 1996, that she was "not yet at liberty to discuss the details of my client's complaint. . . ." Ex. F. Also, the correspondence indicates that Hottell contacted Harter directly and scheduled a meeting with him, which Harter canceled an hour later after consulting with attorney Keller. Ex. G; see also Ex. H (letter from Keller to Sifferlen asserting that Hottell "forced" Harter to make an appointment to meet without his attorney). Later correspondence included a letter from attorney Keller proposing that the university reemploy Harter with full benefits and an assurance that he could be fired only for just cause, plus payment of $250,000 for "current lost wages, pain and suffering." Ex. L. The university rejected the proposal

---

1. This account of the facts is for the sole purpose of deciding the pending motions. The court does not intend to find facts or to suggest any view of the facts for any other purposes at this time.

but forwarded information to Keller about other positions that might be available and appropriate for Harter. Ex. M. Without attempting at this time to attribute blame, suffice it to say that the communications broke down and Harter filed suit in February 1997.

Attorney Keller filed the complaint for Harter. The university hired a law firm other than Baker & Daniels to represent it in the lawsuit. Early in the lawsuit, the university suggested that Keller might be a necessary witness at trial and that she and her law firm might be disqualified from representing Harter. At the end of the hearing on the issue on January 26, 1998, Judge Godich stated his oral ruling disqualifying Keller but not her firm. He found that the mere possibility that Keller's testimony might be adverse to the plaintiff's case was not sufficient to require the firm to be disqualified at that time. Judge Godich also declined to address at that time the issue the university had raised about the possible waiver of attorney-client privilege. Judge Godich followed with a detailed written opinion explaining his decision.

## Discussion

Whether and when the same attorney may assist a disabled employee during the reasonable accommodation process and then represent the employee in a later lawsuit has significant practical effects for enforcement of rights under the ADA and for professional ethics. The issue affects the ability of both a disabled employee and an employer to consult counsel for advice under the ADA and to obtain and choose counsel if the employee decides to file a lawsuit under the ADA. See generally *Doe v. Kohn, Nast & Graf, P.C.*, 862 F.Supp. 1310, 1316 (E.D.Pa.1994) (consulting attorney for advice on ADA issues is protected activity under ADA prohibition on retaliation). If an attorney's participation in the reasonable accommodation process were enough to routinely disqualify an attorney from ADA litigation involving the same employee, that rule could seriously undermine the ability of both employees and small employers to obtain legal representation. Requiring parties to obtain two attorneys is burdensome and expensive. At the same time, the division in roles between attorney and witness is a vital and well established requirement of professional conduct. It plays an important part in maintaining both the appearance and the reality of fairness in court proceedings.

The first step in the analysis here is to understand the role of "reasonable accommodation" under the ADA. The court then turns to the problems presented when a client's attorney in a lawsuit may be called to testify by the opposing party, and whether and to what extent an employee may waive the attorney-client privilege by using an attorney in the reasonable accommodation process.

██ Unlike other federal employment discrimination laws, the ADA does not simply forbid discrimination on a particular basis. The ADA imposes an affirmative duty on employers to provide "reasonable accommodations" for a disabled employee. 42 U.S.C. § 12112(b)(5)(A); cf. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) (under Title VII of Civil Rights Act of 1964, employer is not required to bear "more than a *de minimis* cost" to provide "accommodation" for employee's religious beliefs and practices). The ADA defines "reasonable accommodation" as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). Under the obligation to provide reasonable accommodation, the employer must be willing to consider making changes in its ordinary work rules, facilities, terms, and conditions to enable a disabled person to work. See *Vande Zande v. Wisconsin Dept. of Admin.*, 44 F.3d 538, 542 (7th Cir.1995). The employee is entitled to reasonable accommodation, but not necessarily to the employee's first choice among several reasonable alternatives. See, *e.g.*, *Eckles v. Consolidated Rail Corp.*, 890 F.Supp. 1391, 1399 (S.D.Ind.1995), *aff'd*, 94 F.3d 1041 (7th Cir.1996).

The ADA envisions a process in which the employer and employee engage in a good faith dialogue in an effort to identify steps that could be taken to allow the employee to work and perform the essential functions of a position without imposing an undue burden on the employer. This process ordinarily requires information from both parties. The employer must identify the essential functions of the job and is generally in the best position to provide information about its processes, equipment, and facilities, and about possible changes. The employee is in the best position (often with the help of a doctor) to· provide information about his or her physical or mental limitations and abilities. Because information from both parties is needed, the process must be flexible and interactive. See 29 C.F.R. pt. 1630, app. One may hope that in most situations the parties would engage in this interactive process in a cooperative and non-adversarial way, but that is not always true.

If the employee sues under the ADA and alleges a failure to accommodate his or her disabilities, courts must determine whether the employer is responsible for the breakdown in the process. See *Beck*, 75 F.3d at 1137 ("Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown."). The Seventh Circuit has explained:

> No hard and fast rule will suffice, because neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

*Beck*, 75 F.3d at 1135.

Harter alleges that the university violated the ADA by, among other things, failing to offer reasonable accommodation for his disability. The university responds that it made a reasonable and good faith effort to find a reasonable accommodation that would have allowed Harter to return to work. The university blames ·Harter and attorney Keller for the breakdown in the dialogue. In support of its motion to disqualify Keller and her law firm, the university argues that it will need to call Keller as part of its defense to explain why she wrote what she did in her letters to the university and its attorney and to explain some delays in communication. From the premise that Keller is a necessary witness, the university argues that both Keller and her law firm must be disqualified.

■ These issues are governed by the Indiana Rules of Professional Conduct, which this court has adopted to govern practice in this court. See Local Rule 83.5(f); cf. *Whitted v. General Motors Corp.*, 58 F.3d 1200, 1203 (7th Cir.1995) (district court did not abuse discretion by relying on Disciplinary Rule 5–102 of Code of Professional Responsibility in striking attorney's affidavit submitted in opposition to motion for summary judgment). Rule 3.7 addresses the problem of an attorney in a case testifying as a witness:

> (a) A lawyer shall not act as an advocate at trial in which the lawyer is likely to be a necessary witness except where:
>
> (1) The testimony relates to an uncontested issue;
>
> (2) The testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) Disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Both parties assume, as does the court, that Keller will not be needed to testify about undisputed matters such as authentication of correspondence or other records. As the university sees the case developing, it will

call Keller to testify about her role and actions in the dialogue with the university. As a result, says the university, the dual role threatens its interests because of potential confusion about whether Keller is acting as a witness or as an advocate. A witness should be limited to testifying about matters within her personal knowledge. An advocate is expected to explain and comment on the evidence. The university also expresses concern about the apparent unfairness of a trial in which the plaintiff's lawyer is a key witness for the defense. See generally, *e.g., Gusman v. Unisys Corp.*, 986 F.2d 1146, 1148 (7th Cir.1993) ("The roles of attorney and witness usually are incompatible. A witness is supposed to present the facts without a slant, while an attorney's job is to advocate a partisan view of the significance of the facts."); *United States v. Morris,* 714 F.2d 669, 671–72 (7th Cir.1983) (explaining reasons for general prohibition on attorney acting as witness).

Plaintiff Harter sees no need to call Keller to prove his own case, and he argues that the university also does not need to call her to testify. He says Keller's letters speak for themselves. He also argues that applying Rule 3.7 to disqualify Keller would have significant practical consequences for employees with disabilities because it would require them to use different counsel for negotiations and for any later litigation. He also points out that employees are likely to have difficulty finding two different attorneys to handle the two different stages of the dispute. The same may well be true for smaller employers, and using different attorneys will often be substantially more expensive for employers of any size.

■ When a party wants to call his or her own attorney as a witness to make his case, courts are generally reluctant to allow the attorney to play both roles, although the rule is not absolute. See, *e.g., United States v. Morris,* 714 F.2d at 671–72 (explaining reasons for general prohibition under prior Code of Professional Responsibility but finding no abuse of discretion in district court decision to permit defense attorney to testify in hearing on motion to suppress). Where one party argues that an opponent's attorney

is a necessary witness and moves to disqualify that attorney, however, courts view the opponent's asserted need to call the attorney more skeptically and must be concerned about the possibility that the motion to disqualify is an abusive tactic to hurt the opponent's ability to pursue his case. See, *e.g., McElroy v. Gaffney,* 129 N.H. 382, 529 A.2d 889, 894 (1987); *Spence v. Flynt,* 816 P.2d 771, 779 (Wyo.1991).

■ The threshold question under Rule 3.7 is whether Keller is a "necessary" witness. The court is not persuaded that she is. At the heart of the "necessity" of calling Keller as a witness is the university's contention that Harter has effectively waived the attorney-client privilege as to communications with Keller on the subject of reasonable accommodation. The university argues that Harter, by alleging that the university failed to provide reasonable accommodation in a process in which he relied on advice from his lawyer and used his lawyer to communicate with his employer, has waived the attorney-client privilege for any communications with his lawyer about that process. The university cites no authority directly supporting this argument but argues by analogy from cases holding that a plaintiff alleging personal injury waives any claim to a physician-patient privilege. See, *e.g., Barnes v. Barnes,* 603 N.E.2d 1337, 1343 (Ind.1992). The university also relies on *Johnson v. Rauland–Borg Corp.,* 961 F.Supp. 208, 210–11 (N.D.Ill.1997), which held that when an employer hired an attorney to investigate alleged sexual harassment and relied on evidence of that investigation to argue that it had responded promptly and reasonably to the alleged harassment, the employer had waived the attorney-client privilege concerning the investigation and advice.

The university's analogies are not persuasive. Clients seek advice from attorneys regarding a host of activities, transactions, negotiations, and decisions that may later become the subject of litigation. The attorney-client privilege encourages clients to seek such advice without fear that their communications or their attorneys' advice will become public. See, *e.g., Mayberry v. State,* 670 N.E.2d 1262, 1266 (Ind.1996), cit-

ing *Colman v. Heidenreich*, 269 Ind. 419, 381 N.E.2d 866, 868 (1978), *Corll v. Edward D. Jones & Co.*, 646 N.E.2d 721, 724 (Ind. App.1995), and Ind.Code § 34–1–14–5 ("attorneys shall not be competent witnesses 'as to confidential communications made to them in the course of their professional business, and as to advice given in such cases' ").

■ A client may implicitly waive the attorney-client privilege by putting "in issue" an attorney's advice. See, *e.g., Hunt v. Blackburn*, 128 U.S. 464, 470–71, 9 S.Ct. 125, 32 L.Ed. 488 (1888) (defendant waived privilege when she sought to defeat assertion of *res judicata* by arguing that her lawyer in earlier case had deceived her); *Lorenz v. Valley Forge Insurance Co.*, 815 F.2d 1095, 1098–99 (7th Cir.1987) (applying Indiana privilege law and collecting cases); accord, *Rhone–Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863–64 (3d Cir.1994) (collecting cases); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162–63 (9th Cir.1992) (party put advice in issue and waived privilege by claiming that tax position stated in securities disclosure document was reasonable because it was based on advice of counsel); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991) (defendant waived privilege by claiming he thought allegedly fraudulent transactions were legal and had discussed transactions with his lawyer); *United States v. Exxon Corp.*, 94 F.R.D. 246, 248 (D.D.C.1981) (defendant waived privilege by asserting defense of good faith reliance on government regulations and communications that were subject of advice by counsel); *United States v. Mierzwicki*, 500 F.Supp. 1331, 1335 (D.Md.1980) ("when confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege"); *Panter v. Marshall Field & Co.*, 80 F.R.D. 718, 721–22 (N.D.Ill.1978) (corporate directors and officers waived privilege as to all communications on disputed transaction by asserting reliance on advice of counsel as defense in shareholders' action).

■ That general principle is well established. The issue in this case is whether Harter has done anything to put his communications with his attorney in issue. The university argues that Harter has waived the privilege by filing a lawsuit in which his good faith (or lack of it) may be relevant in evaluating the reasons for the breakdown in the "interactive process" concerning reasonable accommodation. The better-reasoned cases hold, however, that when a client files a lawsuit in which his or her state of mind (such as good faith or intent) may be relevant, the client does not implicitly waive the attorney-client privilege as to all relevant communications unless the client relies specifically on advice of counsel to support a claim or defense. See *Lorenz v. Valley Forge Insurance Co.*, 815 F.2d at 1098 (applying Indiana privilege law and holding that insurer did not waive attorney-client privilege by denying insured's allegation that insurer had failed to make good faith settlement offer in litigation against insured); accord, *Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d at 864 (whether insureds knew of potential liability before they applied for liability coverage was relevant, but insureds had not put advice of attorneys in issue by filing suit; potentially great relevance of privileged communications would not justify finding that insured had waived privilege); *Medtronic, Inc. v. Intermedics, Inc.*, 162 F.R.D. 133, 135 (D.Minn.1995) (client did not waive privilege as to attorney's advice about contract at issue where client did not intend to rely on extrinsic evidence to support interpretation of contract); *North River Insurance Co. v. Philadelphia Reinsurance Corp.*, 797 F.Supp. 363, 370 (D.N.J.1992) (attorney's advice is not "in issue" so as to waive privilege in reinsurance coverage dispute unless the client has asserted a claim or defense that he intends to prove by disclosing privileged communications); *Pittston Co. v. Allianz Insurance Co.*, 143 F.R.D. 66, 71 (D.N.J.1992) (relevance of privileged communications did not warrant a finding of waiver in litigation involving indemnification of insured; attorney's advice is not in issue unless client has asserted claim or defense it intends to prove by use of privileged communications); *Clark v. City of Munster*, 115 F.R.D. 609, 614 (N.D.Ind.1987) (civil rights plaintiff did not waive privilege as to communications with

his attorney in criminal prosecution; complaint did not challenge advice or attempt to rely on advice to prove claim). Harter's state of mind may be relevant here, but the possibility that privileged communications could provide the opponent with relevant evidence is not a sufficient basis for finding a waiver of the privilege.[2]

Defendant university relies most heavily on *Johnson v. Rauland–Borg Corp.*, in which the court found an employer had put privileged communications in issue by arguing that it responded promptly and reasonably to allegations of sexual harassment by hiring an outside lawyer to investigate the situation. This defense was relevant under Seventh Circuit cases holding that an employer is not strictly liable for one employee's harassment of another if the employer took reasonable and prompt actions upon learning of the accusations. See *Johnson*, 961 F.Supp. at 210, citing *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir.1995), and *McKenzie v. Illinois Dept. of Transportation*, 92 F.3d 473, 480 (7th Cir.1996). Harter's consultations with attorney Keller are not comparable to such a defense that relies specifically on proof of an attorney's actions.

The university's waiver argument has not explained persuasively how Harter's consultations with attorney Keller are different from any other person's consultations with an attorney concerning a transaction, decision, or negotiations that ultimately result in litigation. The university's waiver theory would, if accepted, effectively and thoroughly erode the privilege and discourage parties from seeking advice from attorneys. The fact that Harter has asserted a claim based on failure to provide reasonable accommoda-

tion under the ADA does not waive the attorney-client privilege as to communications that are otherwise privileged.

■■■ The university contends further that Harter has also waived the privilege by relying on attorney Keller to communicate with the university for him on the issue of reasonable accommodation. That fact does not change the analysis of the waiver issue. Harter used his lawyer as his agent in the negotiations, but that role for attorneys is quite common and does not result in waiver of the attorney-client privilege. Harter has not given any indication at this point that he contends Keller took any unauthorized actions or made any unauthorized statements on his behalf. If he were to do so—that is, if he were to deny in essence, that he is responsible as a principal for actions that Keller took as his agent—then he would waive the privilege as to relevant communications. At this time, because Harter's communications with Keller remain privileged, the university's arguments that Keller is a necessary witness in its case lose their force.

■■■ A necessary witness is not the same thing as the "best" witness. If the evidence that would be offered by having an opposing attorney testify can be elicited through other means, then the attorney is not a necessary witness. In addition, of course, if the testimony is not relevant or is only marginally relevant, it certainly is not necessary. The university relies on broad language in the Seventh Circuit's opinion in *Beck* to support its argument that it needs to question Keller about her and Harter's subjective intentions and motivations. See 75 F.3d at 1135 ("A party that obstructs or

2. Some opinions contain language that can be interpreted as authorizing a finding of waiver if the client has asserted a claim or defense as to which the client's state of mind is in issue and privileged communications contain information "vital" to the opposing party. See *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975) (by pleading affirmative defense of good faith qualified immunity in civil rights case, defendants implicitly waived privilege as to legal advice provided by the state's attorney general); *Payton v. New Jersey Turnpike Auth.*, 148 N.J. 524, 691 A.2d 321, 335 (1997) (privilege is not sacrosanct and "may be pierced upon a showing of need, relevance and materiality, and the fact that the

information could not be secured from any less intrusive source."). Indiana courts have not been hospitable to such attacks on the privilege. This broad approach to waiver has been criticized because it effectively discourages a client from seeking legal advice by removing the assurance of confidentiality, see, *e.g., Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d at 864; Developments in the Law—Privileged Communications, 98 Harv. L.Rev. 1450, 1639–43 (1985). Only when the client seeks to take advantage of the privileged communications themselves should a waiver be found on the theory that the client has put the attorney's advice in issue.

delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility."); accord, *Bultemeyer v. Fort Wayne Community Schools,* 100 F.3d 1281, 1285 (7th Cir.1996), quoting *Beck.* In writing that general language, the court was not considering the problem presented here. In view of the disruptions in attorney-client relations that the university's position would cause— issues that were not presented to or addressed by the court in *Beck*—the general language should not be understood as an implicit holding that an employer is entitled to examine the employee's subjective thought processes by subpoenaing the employee's attorney to testify at trial.

Under the terms of the ADA, the focus at trial is on the *employer's* actions, and specifically on whether the employee can prove by a preponderance of the evidence that the employer was responsible for the breakdown of the dialogue concerning reasonable accommodations. The facts that are most central to this inquiry are the objective circumstances the university faced—including the communications it received from Harter and any persons speaking for him, including his attorney. There is no apparent reason why testimony from Keller about her subjective motives, purposes, or thoughts would be essential in this inquiry. There is a long paper trail in this case. Keller said what she said and wrote what she wrote. Her testimony is not necessary to prove that those communications occurred. Questions about why she wrote what she wrote are at best only marginally relevant except to the extent that she communicated her reasons to the university. Just as a party's private beliefs are irrelevant in interpreting an ambiguous contract— what matters are objective manifestations of intentions—what is most relevant here is the objective situation presented to the university and whether the university's response to that was a reasonable and good faith response. Cf. *Medtronic, Inc. v. Intermedics, Inc.,* 162 F.R.D. at 135 (where plaintiff did not intend to introduce evidence extrinsic to written contract to interpret contract, plaintiff had not waived attorney-client privilege as to confidential communications about the contract).

 The court assumes that in the unlikely event an employer finds a witness to whom the plaintiff employee or his attorney explained a clever strategy for trapping the employer into refusing reasonable accommodation, such evidence of subjective bad faith would be relevant. There is no indication here, however, that Keller would give evidence tending to show that Harter was acting in bad faith. The mere hope and remote prospect that she might do so, even indirectly, do not make her a "necessary" witness who must be disqualified. In addition, if Harter (whether on Keller's advice or not) refused to comply with reasonable requests or for meetings to discuss his situation, any new explanation that he (or Keller) might give now, which they did not give to the university at the time of the negotiations, should not affect the university's liability. Harter also suggests that he may offer evidence that the university refused to meet with him if he insisted on having his attorney present. Keller's testimony on this matter is certainly not necessary because Harter himself can testify to his communications with Hottell or others in the university who may have refused to meet with him.

Finally, the university argues that Keller's testimony is necessary because testimony from other witnesses (such as university personnel or attorney Sifferlen) about what Keller said would be hearsay. This argument has little merit. First, what is most relevant here is the course of communications. If the communications by Keller are not offered to prove the truth of her out-of-court statements, they would fall outside the definition of hearsay. Fed.R.Evid. 801(c). Second, even if the university wants to use Keller's statements to prove the truth of what she said, her statements would be admissions attributable to Harter because they would have been made by his agent within the scope of her agency. See Fed.R.Evid. 801(d)(2)(D).

 At this time, therefore, the university has not shown that attorney Keller is a

necessary witness in this case. There remains a possibility of course that events could unfold so that her testimony might be necessary on some points. Harter might take steps that would effectively waive the privilege protecting his communications with Keller, or the trial may develop so that the university might need Keller's testimony to fill in a few evidentiary gaps. If Keller's testimony becomes necessary on a few narrow topics, Rule 3.7 leaves open the possibility that she could testify without necessarily being disqualified. Less drastic alternatives, including cautionary instructions to the jury about an attorney's testimony on narrowly confined topics, might be sufficient to avoid or minimize possible prejudice to the university without causing the disruption of disqualification. See Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering, § 3.7:202 at 685 (2d ed.1998 supp.).[4]

*Conclusion*

For the reasons stated here, the court sustains plaintiff's objections to the decision of the magistrate judge, and defendant's motion to disqualify attorney Keller is hereby DENIED. Defendant's objections to the decision of the magistrate judge are hereby overruled.

So ordered.

---

4. This court agrees with Magistrate Judge Godich that even if attorney Keller should be disqualified, other lawyers in her firm should not be disqualified. Rule 3.7 specifically provides that a lawyer may act as an advocate at trial even if another lawyer in the same firm is likely to be called as a witness, unless the more general conflict of interest prohibitions in Rule 1.7 and Rule 1.9 would bar the law firm from the representation. In this respect, Rule 3.7 marks a significant change from Disciplinary Rule 5–102 of the earlier Code of Professional Responsibility, which provided that if one lawyer was barred from the representation, the lawyer's entire firm was also barred. As Judge Godich explained in his opinion, there is no indication at this point that Keller's testimony, to the extent that any such testimony might ever be needed, would be such as to create a conflict of interest between attorney and client.