DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Puritas Metal Products, Inc., Barbara Cook, Richard Cook and John Rybarczyk, appeal the judgment of the Lorain County Court of Common Pleas. This Court reverses.
 I. {¶ 2} This case presents as a convoluted confusion of issues.
 {¶ 3} Robert S. Cook was the majority shareholder of Puritas Metal Products, Inc. ("Puritas"). It appears that his shares were held in trust and he voted those shares in the capacity of trustee of the Robert S. Cook Trust. When he died, his wife Barbara Cook purportedly became trustee of both the Robert S. Cook Trust and the Robert S. Cook Marital Trust. There is a dispute regarding whether the two trusts are one and the same, and whether Barbara Cook as trustee of both trusts had the authority to vote the Puritas shares held in trust. *Page 2 
 {¶ 4} A shareholders' meeting was purportedly called for May 5, 2006. Appellee, Christopher Cole, owned approximately 25% of the Puritas shares. At the shareholders' meeting, Cole was represented by a proxy who challenged Barbara Cook's authority to vote her late husband's shares. Cole's proxy also challenged the authority of two other shareholders to vote in a fiduciary capacity. Believing that Cole was the only shareholder with authority to vote, Cole's proxy elected a new Board of Directors of Puritas, adjourned the meeting and left. The two other shareholders also left. Thereafter, Barbara Cook, as trustee of a trust including 74% of the Puritas shares and therefore believing she had the fiduciary capacity to vote those shares[1], elected a new Board of Directors, including herself and her two sons (the "Cook Directors"). This new Board then terminated Cole's employment with Puritas and removed him as president.
 {¶ 5} On May 9, 2006, Puritas filed a complaint for ejectment and trespass against Christopher Cole. Puritas alleged that it terminated Cole as president of the company but that Cole continued to retain possession and control of the premises. Puritas sought a preliminary and permanent injunction enjoining Cole from further trespass upon and possession of Purtitas' land. Contemporaneously with the complaint, Puritas filed a motion for a temporary restraining order and preliminary injunction. On June 12, 2006, Puritas filed a supplemental brief in support of its motion for preliminary injunction. Cole filed a response in opposition to the motion, asserting in part that his employment and status as president of Puritas were never validly terminated. Theodore S, Altfeld, [2] individually and as trustee of the Theodore S. Altfeld trust, *Page 3 
and Ronald C. Billings, individually and as trustee of the Ronald C. Billings trust, moved to intervene as new party defendants based on their status as shareholders in Puritas. The trial court granted their motion to intervene.
 {¶ 6} Cole moved to disqualify the attorneys and law firm representing Puritas and Puritas opposed the motion. Puritas moved to disqualify the attorneys and law firm representing Cole and Cole opposed the motion. The attorneys and law firm representing Puritas filed a motion to withdraw as counsel for Puritas, and Puritas further withdrew its motion to disqualify counsel for Cole. On July 20, 2006, new counsel filed a notice of appearance on behalf of "Plaintiff Puritas Metal Products, Inc." On September 14, 2006, a different law firm and attorneys filed a notice of appearance on behalf of "Puritas Metal Products, Inc." It only later became clear from the record that the Puritas referenced in the two notices were not one and the same. Rather, the first Puritas was the company as directed by the Cook Directors, while the second Puritas, which Cole recognized, purported to be the true entity which refused to recognize the company after the purported election of the Cook Directors. The second Puritas entity went so far as to move to intervene on September 28, 2006, in order to protect its interests. The plaintiff opposed the motion, asserting it was already a party to the action, so that its interests were adequately protected. The trial court does not appear to have ruled on the motion to intervene.
 {¶ 7} On September 14, 2006, Cole filed an answer and a third-party complaint against Barbara Cook, personally, as executrix of her late husband's estate, and as trustee of the Robert S. Cook Trust and the Robert S. Cook Marital Trust; and against John Rybarczyk, Mrs. Cook's attorney. Cole alleged breach of fiduciary duty against Mrs. Cook, and tortious interference with immigration status and civil conspiracy against both Cook and Rybarczyk. *Page 4 
 {¶ 8} On October 4, 2006, Cole filed a motion to dismiss Puritas' complaint. Puritas opposed the motion. Also on October 4, 2006, Cole filed a motion for a temporary restraining order "to prevent occurrence of bogus shareholders' meeting" scheduled for October 6, 2006. On December 29, 2006, Cole renewed his motion for a temporary restraining order "to prevent occurrence of bogus shareholders' meeting" on January 2, 2007. On May 22, 2007, Cole filed his third motion for temporary restraining order "to prevent occurrence of bogus shareholders' meeting" on May 25, 2007.
 {¶ 9} On October 6, 2006, the intervening defendants, Altfeld and Billings, moved to stay all proceedings pending determination of the status of all beneficiaries of the late Robert S. Cook.
 {¶ 10} On November 9, 2006, Barbara Cook filed a motion to dismiss Cole's third-party complaint pursuant to Civ. R. 12(B)(6). Rybarczyk filed his own motion to dismiss the third-party complaint on November 15, 2006. Cole opposed the motions to dismiss. There is no indication in the record that the trial court ever ruled on the motions to dismiss.
 {¶ 11} On October 6, 10, 12 and 13, 2006, the trial court held a hearing on Puritas' pending motion for preliminary injunction. On November 9, 2006, Puritas filed a post-hearing brief in support of its motion. On December 1, 2006, intervening parties Altfeld and Billings filed their post-hearing brief opposing the motion for preliminary injunction. On December 4, 2006, Cole filed his post-hearing brief in opposition to the motion for preliminary injunction. Various supplements and responses were also filed. On February 9, 2007, the trial court issued a journal entry in which it asserted, "The Court to rule on the motion for preliminary injunctive relief." On April 10, 2007, the trial court issued another journal entry in which it asserted, "The Court to rule on the application for preliminary injunctive relief." On May 22, 2007, Cole filed a *Page 5 
motion to stay the trial court's "decision with regard to Plaintiff's Motion for Temporary Restraining Order and preliminary injunction" until issues involving a third-party's purported interest in purchasing Puritas could be resolved by the parties. It appears as if Cole was requesting the trial court to further delay its ruling on those motions, as no such decisions are evident from the record.
 {¶ 12} On June 26, 2007, Puritas filed a notice of voluntary dismissal of its complaint pursuant to Civ. R. 41(A). On July 2, 2007, Cole filed a motion to vacate Puritas' voluntary dismissal and for the court to retain jurisdiction over his third-party claims. In his motion, Cole conceded that third-party claims are typically only proper when they are for indemnification or contribution, so that they may not stand alone absent an underlying complaint. He, therefore, requested that the trial court "substitute Barbara Cook as the real plaintiff in this action" and "treat [his third-party complaint] for what it truly is: a counterclaim against Barbara Cook." Intervening parties Altfeld and Billings filed an amicus brief requesting that the trial court strike Puritas' voluntary dismissal. Puritas opposed these motions to vacate and strike its voluntary dismissal.
 {¶ 13} On June 28, 2007, Cole filed a motion to show cause why Attorney John Rybarczyk and Barbara Cook should not be held in contempt; a motion for an order invalidating the actions taken by Cook at the alleged shareholders' and directors' meetings on May 25, 2007, and an order returning the status quo; and a motion for an immediate hearing. In support of his contempt motion, Cole alleged that Cook's and Rybarczyk's actions with regard to Puritas "constitute outright blatant defiance of [the trial] Court's rulings." Cole proposed various penalties and remedies, including the disqualification of Rybarczyk as Cook's attorney because of the status of both as defendants and the "blatant conflict of interests between [Rybarczyk] and *Page 6 
Cook[.]" On August 13, 2007, Cole filed a supplemental motion to show cause, moving the trial court to compel non-party Richard Cook to appear and show cause why he should not be held in contempt for acting in concert with Barbara Cook and Attorney Rybarczyk to defy the trial court's prior, yet unidentified, orders. Cole argued that because the trial court "had clearly announced its intention that until certain matters were resolved by the Court, Cole was to remain as President of Puritas[,]" Richard Cook should be held in contempt for violating such orders because "[a]s the son of Barbara Cook, it cannot be doubted that Richard was fully aware of the status of the proceedings in this Court prior to June 26, 2007."
 {¶ 14} Mrs. Cook filed a memorandum in opposition to Cole's motion to show cause. She argued that the trial court had no authority to consider the motion because a notice of voluntary dismissal terminates the action and divests the court of further jurisdiction. She further argued that the trial court had no jurisdiction to hold her in contempt because the trial court never issued any order directing the parties to maintain the status quo. Accordingly, Cook argued that she had no knowledge of any valid order or her violation of such. Finally, she argued that there was no basis for invalidating the actions taken at the May 25, 2007 shareholders' and directors' meetings because they were properly conducted.
 {¶ 15} On July 9, 2007, Rybarczyk filed a motion to strike Cole's motion to show cause. In support thereof, he argued (1) that Puritas' voluntary dismissal of the underlying complaint terminated the case and caused Cole's third-party claims to become moot, and (2) that the voluntary dismissal of the underlying complaint divested the trial court of jurisdiction to address any further issues within the context of the case. *Page 7 
 {¶ 16} On July 24, 2007, Cole filed a motion for leave to file an amended answer and third-party complaint. Puritas, Cook and Rybarczyk all filed separate oppositions to Cole's motion for leave.
 {¶ 17} On August 3, 2007, the Puritas entity recognized by Cole, but not the Cook Directors, filed "Plaintiff's Memorandum in support of motion for preliminary injunction." Again, this Court notes that there is no record of the trial court's allowing this second Puritas entity to intervene.
 {¶ 18} On August 7, 2007, the trial court issued a journal entry in which it (1) denied Cole's motion to vacate Puritas' voluntary dismissal; (2) denied Cole's motion for leave to amend his answer and third-party complaint because it was filed after Puritas filed its voluntary dismissal; and (3) denied a motion to strike Cole's motion to show cause. The trial court scheduled a hearing on Cole's motion to show cause on August 24, 2007.
 {¶ 19} On August 30, 2007, Rybarczyk filed a motion for recusal of Judge Betleski for the reason that the judge was prohibited from presiding over a matter, specifically the show cause hearing, in which he would be called as a witness. Barbara Cook and Richard Cook also filed a joint motion for recusal of Judge Betleski. Cole opposed the motions for recusal.
 {¶ 20} The matter came before the trial court for hearing on Cole's motion for show cause and the motions for recusal on August 31, 2007. The same day, Judge Betleski issued a journal entry in which he recused himself and transferred the case to the administrative judge for reassignment. In addition, he found that "all attorneys who attended pre-trials, hearings, and status conferences in this matter, and this Court, are necessary witnesses." Judge Betleski ordered: "Accordingly, all such counsel are precluded from further representation of the parties in this matter." The judge did not issue any ruling on the motion to show cause or a pending *Page 8 
motion by a non-party to quash a subpoena. Puritas, Barbara Cook, Richard Cook and John Rybarczyk timely appealed, raising two assignments of error for review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED AS A MATTER OF LAW BY CONDUCTING THE CONTEMPT HEARING AND DISQUALIFYING THE ATTORNEYS BECAUSE IT DOES NOT HAVE JURISDICTION TO CONSIDER THE ISSUE OF CONTEMPT WHEN THERE IS NO JOURNALIZED ORDER."
 {¶ 21} Puritas, Barbara Cook, Richard Cook and John Rybarczyk argue that the trial court erred by disqualifying the attorneys involved in this case because it did not have the jurisdiction to hold a hearing on Cole's contempt motion during which the court ordered the disqualification. This Court declines to consider Appellants' argument as it is not ripe for review.
 {¶ 22} The Ohio Supreme Court has held that, where a trial court has not determined an issue raised on appeal, there is no justiciable issue for appellate review. Egan v. Natl. Distillers Chem. Corp. (1986),25 Ohio St.3d 176, 177-78.
 {¶ 23} In this case, the trial court has not proceeded with a hearing on Cole's pending contempt motion. Accordingly, the trial court has not yet determined whether or not it maintains jurisdiction to consider the motion. In the absence of such a determination by the trial court, Appellants' challenge to the order disqualifying counsel on the basis of the trial court's lack of jurisdiction is not ripe for appellate review. Although the jurisdiction of a trial court may be challenged by extraordinary writ, a direct appeal is not the appropriate remedy when the issue is not ripe. Accordingly, this Court declines to address the first assignment of error as it is not ripe for appeal. *Page 9 
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DISQUALIFIED ALL COUNSEL FROM FUTURE PROCEEDINGS IN THIS CASE WHEN THERE IS NO JOURNALIZED ORDER THAT HAS ALLEGEDLY BEEN VIOLATED, THE TRANSCRIPT CONTAINS ANY RELEVANT ORAL PRONOUNCEMENTS AND THE TRIAL COURT DID NOT IDENTIFY ANY OTHER ORAL PRONOUNCEMENTS THAT MAY HAVE BEEN VIOLATED." (sic)
 {¶ 24} Although this assignment of error on its face appears to challenge the trial court's order disqualifying counsel on the basis of the lack of journalization of any order or violation thereof, Appellants substantively argue that the trial court erred by disqualifying counsel because it has not been determined that all counsel are necessary witnesses for purposes of any contempt hearing.[3] This Court agrees.
 {¶ 25} This Court reviews a trial court's disqualification of counsel for an abuse of discretion. Avon Lake Mun. Utils. Dept. v.Pfizenmayer, 9th Dist. No. 07CA009174, 2008-Ohio-344, at ¶ 13, citingClucas v. Vojtech (1997), 119 Ohio App.3d 475, 477. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. The trial court may sua sponte raise the issue of counsel's disqualification where counsel may have to act as both an advocate and a witness. Quigley v.Telsat, Inc., 9th Dist. No. 23481, 2007-Ohio-2884, at ¶ 7, citingMentor Lagoons, Inc. v. Rubin (1987), 31 Ohio St.3d 256, paragraph two of the syllabus. *Page 10 
 {¶ 26} Appellants assert that the record establishes that "there has been no determination that any of the disqualified attorneys are necessary witnesses[,]" so that any order disqualifying them is premature. Cole does not challenge the substance of Appellants' arguments. Rather, Cole asserts that because the trial court has not issued an order ruling on the contempt motion, there is no final, appealable order which imputes jurisdiction to this Court to consider this appeal. The Ohio Supreme Court has held that "[t]he granting of a motion to disqualify counsel in a civil action is a final, appealable order pursuant to R.C. 2505.02." Russell v. Mercy Hosp. (1984),15 Ohio St.3d 37, at syllabus.
 {¶ 27} While the trial court found in its August 31, 2007 journal entry that "all attorneys who attended pre-trials, hearings, and status conferences in this matter" are "necessary witnesses[,]" the trial court abused its discretion by disqualifying counsel.
 {¶ 28} It is well-established that disqualification constitutes a "drastic measure which courts should hesitate to impose except when absolutely necessary[,]" in large part because it deprives a client of the counsel of his choosing. Kala v. Aluminum Smelting RefiningCo. (1998), 81 Ohio St.3d 1, 6; see, also, Quigley at ¶ 6. The trial court should disqualify counsel "if, and only if, the [c]ourt is satisfied that real harm is likely to result from failing to [disqualify]." Barberton Rescue Mission v. Hawthorn, 9th Dist. No. 21220, 2003-Ohio-1135, at ¶ 5.
 {¶ 29} The Ohio Rules of Professional Conduct took effect on February 1, 2007, and are applicable to the instant matter. Form of citation; effective date; application (b) of the Ohio Rules of Professional Conduct; Horen v. Toledo Pub. School Dist. Bd. of Edn., 6th Dist. No. L-07-1131, 2007-Ohio-6883, at ¶ 8. *Page 11 
 {¶ 30} Prof.Cond.R. 3.7(a) states:
"A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies:
"(1) the testimony relates to an uncontested issue;
"(2) the testimony relates to the nature and value of legal services rendered in the case;
"(3) the disqualification of the lawyer would work substantial hardship on the client."
Official Comment 4 to the rule states:
 "division (a)(3) recognizes that a balancing is required between the interests of the client and those of the tribunal and the opposing party. Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client."
 {¶ 31} Because of the very recent enactment of Prof.Cond.R. 3.7, Ohio appellate courts have had limited opportunity to review its application. Many other jurisdictions, however, have longer interpreted an identical or substantially similar provision. Accordingly, this Court looks to other jurisdictions for guidance regarding a trial court's determination that an attorney is a necessary witness.
 {¶ 32} The Supreme Court of Nebraska has held:
 "A party seeking to call opposing counsel can prove that counsel is a necessary witness by showing that (1) the proposed testimony is material and relevant to the determination of the issues being litigated and (2) the evidence is unobtainable elsewhere." Beller v. Crow (2007), 274 Neb. 603, 609, 742 N.W.2d 230.
 {¶ 33} The Supreme Court of Arkansas has held:
 "Indeed, courts from other jurisdictions have concluded that Rule 3.7 is applicable to cases where the attorney will be called to testify for the opposing party, provided that the opposing party demonstrates three things: (1) that the attorney's testimony is material to the determination of the issues being litigated; (2) that the *Page 12 
evidence is unobtainable elsewhere; and (3) that the testimony is or may be prejudicial to the testifying attorney's client. Courts have viewed the three-pronged test as being necessary to prevent Rule 3.7 from being used as a sword or a tactical measure to hinder the other party's case. In this respect, the test strikes a reasonable balance between the potential for abuse and those instances where the attorney's testimony may be truly necessary to the opposing party's case." (Internal citations and quotations omitted.) Weigel v. Farmers Ins. Co. (2004), 356 Ark. 617, 625, 158 S.W.3d 147.
 {¶ 34} Other jurisdictions have stated:
 "A necessary witness is not just someone with relevant information, however, but someone who has material information that no one else can provide. Whether a witness ought to testify is not alone determined by the fact that he has relevant knowledge or was involved in the transaction at issue. Disqualification may be required only when it is likely that the testimony to be given by the witness is necessary. Testimony may be relevant and even highly useful but still not strictly necessary. A finding of necessity takes into account such factors as the significance of the matters, weight of the testimony and availability of other evidence. * * * A party's mere declaration of an intention to call opposing counsel as a witness is an insufficient basis for disqualification even if that counsel could give relevant testimony. * * * There is a dual test for necessity. First the proposed testimony must be relevant and material. Second, it must be unobtainable elsewhere." (Internal quotations omitted.) Mettler v. Mettler
(Conn.Super.2007), 928 A.2d 631, 633-34, citing Tropical Suntan Ctrs., Inc. v. Salvati (1990), 1 Conn. L. Rptr. 497, 498, quoting SS Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.
(1987), 69 N.Y.2d 437, 445-46, 508 N.E.2d 647 and Sec. Gen. Life Ins. v. Superior Court (1986), 149 Ariz. 332, 335, 718 P.2d 985.
 {¶ 35} Finally, "[a] necessary witness is not the same thing as the `best' witness. If the evidence that would be offered by having an opposing attorney testify can be elicited through other means, then the attorney is not a necessary witness. In addition, of course, if the testimony is not relevant or is only marginally relevant, it certainly is not necessary." Knowledge A-Z, Inc. v. Sentry Ins.
(Ind.App.2006), 857 N.E.2d 411, 418, quoting Harter v. Univ. ofIndianapolis (S.D.Ind. 1998), 5 F.Supp.2d 657, 665.
 {¶ 36} In this case, the trial court heard no evidence or argument by the parties regarding the disqualification of counsel. Rather, the trial court asserted that it had considered the issue of counsels' disqualification the night before as it considered its own recusal. The trial court, *Page 13 
however, could not have considered whether the proposed testimony of counsel was material and relevant to the determination of the contempt issue because it never determined several preliminary issues. First, there has been no determination of the status of the contempt sought, specifically, whether Cole is asserting criminal or civil, or direct or indirect contempt. In fact, the trial court judge admitted during the August 31, 2007 proceedings that he could not say whether the contempt might be direct or indirect, asserting "I've not deigned to review that matter yet because I don't think it was before the Court." Further significant is the fact that there has been no determination regarding whether a journalized order is a prerequisite to a finding that Appellants can be held in contempt. Such preliminary determinations are necessary before the trial court can determine what testimony might be material and relevant to the contempt proceedings.
 {¶ 37} Second, there has been no determination regarding the origin of the order Appellants allegedly violated. The trial court recognized that certain parties believed that any order which Appellants might have violated emanated out of the October 2006 hearing, while other parties believed that the order necessarily emanated from a culmination of numerous pretrials, conferences and hearings before and after the proceedings of October 2006. In regard to the parties who believed that any order which Appellants allegedly violated emanated from multiple proceedings, the trial court surmised merely that "if you're right, if what transpired in the proceedings before the October hearing and after, in the May and June pretrial, that means every attorney at the table is a witness." Yet the trial court made no determination that the order Appellants allegedly violated emanated from multiple proceedings, rather than solely out of the October 2006 hearing. The trial court acknowledged that a transcript of the October 2006 hearing exists, but it did not consider the availability of this evidence. If the judge to which the *Page 14 
underlying case is reassigned finds only the October 2006 discussion to be relevant to the contempt proceedings, then counsels' testimony regarding what transpired at that hearing would not be necessary. Only if the discussions during other proceedings are relevant to the contempt hearing would the testimony of counsel be relevant and material. The trial court failed to make such a determination.
 {¶ 38} In addition, the trial court did not consider whether counsels' testimony, if in fact material and relevant to the issues, was unobtainable elsewhere. The trial court acknowledged that several parties were being represented by more than one attorney. Nevertheless, the trial court, in disqualifying every attorney ever involved in the case, necessarily did not consider whether co-counsel might testify, allowing the other attorneys to continue in their representation of the various parties.
 {¶ 39} In this case, the trial court made the finding that all of the attorneys involved were necessary witnesses for purposes of the contempt hearing without making certain requisite preliminary findings. Not until such findings were made could the court consider whether counsels' proposed testimony was relevant, material and unobtainable elsewhere. Because the trial court did not, and could not based on its lack of other considerations, consider whether the testimony of each attorney involved in the case was relevant and material to the contempt issues and that it was unobtainable elsewhere, the trial court abused its discretion by disqualifying Appellants' counsel from further proceedings in the case. Appellants' second assignment of error is sustained.
 III. *Page 15 {¶ 40} This Court declines to consider Appellants' first assignment of error as it is not ripe for appeal. Appellants' second assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is reversed and the cause remanded to the judge assigned after Judge Betleski's recusal for further proceedings consistent with this decision. *Page 16 
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellee.
DONNA J. CARR FOR THE COURT
WHITMORE, J. BAIRD, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] The Lorain County Probate Court has issued a judgment entry, contained at various places in this record, recognizing the Robert S. Cook Trust and Robert S. Cook Marital Trust as one and the same, and further recognizing that Barbara Cook, as trustee, has the authority to vote the Puritas shares included in the trust.
[2] Subsequent to the filing of the motion to intervene, Mr. Altfeld was consistently referred to as "Alteld."
[3] The trial court disqualified "all attorneys who attended pre-trials, hearings, and status conferences in this matter[.]" Counsel for Cole, the intervening parties Altfeld and Billings, and the Puritas entity recognized by Cole, have not appealed their disqualification. Accordingly, this Court declines to address any issues regarding their disqualification. In addition, no party has appealed the recusal of Judge Betleski and the reassignment of this case to Judge Ewers. *Page 1