**KNOWLEDGE A–Z, INC.,**
**Appellant–Defendant,**

v.

**SENTRY INSURANCE,**
**Appellee–Plaintiff.**

**No. 29A04–0604–CV–218.**

Court of Appeals of Indiana.

Nov. 27, 2006.

Rehearing Denied Jan. 17, 2007.

---

Donald Mark Garringer, Plainfield, IN, Attorney for Appellant.

Alan A. Bouwkamp, Newton Becker Bouwkamp, Indianapolis, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

Knowledge A–Z, Inc., ("Knowledge") appeals the trial court's grant of summary judgment to Sentry Insurance ("Sentry").[1] Knowledge raises six issues, which we consolidate and restate as:

I.  Whether the trial court erred by denying Knowledge's motion to disqualify counsel and motion to strike Sentry's motion for summary judgment;

II.  Whether the trial court erred by granting Sentry's motion for summary judgment regarding Sentry's claims;

III.  Whether the trial court erred by granting Sentry's motion for summary judgment regarding Knowledge's counterclaim; and

IV.  Whether the trial court abused its discretion by awarding sanctions to Sentry.

We affirm.[2]

The relevant designated facts follow. Knowledge entered into an insurance contract with Sentry with effective dates of

---

**1.**  We direct Knowledge's attention to Ind. Appellate Rule 46(A)(10), which requires an appellant's brief to "include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal."

**2.**  After Knowledge filed its appellant's brief, Sentry filed a "Motion to Strike Undesignated Evidence and Scandalous Matters." Sentry claimed, in part, that Knowledge relied upon a Geist Primary Care letter, a March 22, 2004, letter, and a May 23, 2004, letter that were never designated by Sentry to the trial court. Additionally, after Knowledge filed its reply brief, Sentry filed a "Supplemental Motion to Strike Citation to Undesignated Evidence in Appellant's Reply Brief" based upon

July 1, 2002, to July 1, 2003. The policy provided the following:

### 3. DUTIES IN THE EVENT OF LOSS OR DAMAGE

a. You must see that the following are done in the event of loss or damage to Covered Property:

\* \* \* \* \*

(6) As often as may be reasonably required, permit [Sentry] to inspect the property proving the loss or damage and examine [the insured's] books and records.

\* \* \* \* \*

(8) Cooperate with us in the investigation or settlement of the claim

\* \* \* \* \*

b. We may examine any insured under oath while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim including an insured's books and records. In the event of an examination, an insured's answers must be signed.

Appellee's Appendix at 48–49.

In December 2002, Knowledge alleged that it had sustained a loss of $1,337,012.00 due to an employee's theft of computer hardware and software. Knowledge filed a proof of loss with Sentry, and Sentry attempted to investigate the claim. After a dispute regarding Knowledge providing documents to Sentry and submitting to examinations under oath, Sentry filed a complaint for declaratory judgment on June 21, 2004. In the complaint, Sentry alleged that "[b]ased upon the failure of Nigam Arora to submit to an Examination Under Oath, the failure to provide requested financial records and documents, and a failure to cooperate, Knowledge has acted in contravention of the terms of the Policy and is not entitled to coverage under it." Appellant's Supp. Appendix at 4. Knowledge responded by filing a counterclaim in which it alleged that Sentry had "no legitimate basis" for denying payment on Knowledge's claim, that "Sentry's denial was not made in good faith and upon a rational basis," and that Knowledge was entitled to punitive damages. *Id.* at 10.

On May 17, 2005, Sentry filed a motion for summary judgment claiming that it was entitled to judgment regarding liability for coverage because Knowledge repeatedly refused and failed to submit to examination under oath as required by the policy and failed to provide documentation regarding the value of the stolen property. Sentry also argued that it was entitled to summary judgment on Knowledge's bad faith counterclaim.

On July 21, 2005, Knowledge filed a motion to alter the time for responding to Sentry's motion for summary judgment,

Knowledge's citation to the same documents. A review of the record demonstrates that Sentry designated the "September 22, 2004 Responses to Plaintiff's Requests for Admissions" in support of its motion for summary judgment. Appellant's Appendix at 9. Numerous exhibits were attached to these admissions, and the admissions were used to authenticate the exhibits. Exhibit 31, attached to the admissions, is the Geist Primary Care letter, Exhibit 23, attached to the admissions, is the March 22, 2004, letter, and Exhibit 26, attached to the admissions, is the May 23, 2004, letter. Consequently, we conclude that these documents were designated to the trial court by Sentry. Moreover, the "scandalous statements" described in Sentry's motion pertain to Knowledge's interpretation of these documents. We deny Sentry's Motion to Strike Undesignated Evidence and Scandalous Matters and its Supplemental Motion to Strike Citation to Undesignated Evidence in Appellant's Reply Brief.

which the trial court granted, giving Knowledge until August 21, 2005, to respond to Sentry's motion for summary judgment. Knowledge did not respond to the motion for summary judgment by August 21, 2005, and on September 2, 2005, Sentry filed a motion to preclude the filing of a response or further extension of time.

Knowledge then filed a motion to disqualify counsel and motion to strike Sentry's motion for summary judgment. Knowledge alleged that Sentry's motion for summary judgment was based upon letters from Sentry's counsel to Knowledge, that Sentry's counsel was a necessary witness in the case, and that his "testimony" was "hotly disputed" by Knowledge. Appellee's Appendix at 188. Knowledge attached as an exhibit a letter from Arora to Sentry's counsel dated March 24, 2004, but allegedly sent on April 24, 2004. Sentry then filed a motion to strike Knowledge's improper submission of evidence (the March 24th letter), an objection to the motion to disqualify counsel, and a petition for fees pursuant to Ind. Code § 34-52-1-1.

Knowledge responded by filing: (1) a "Preliminary Response" to Sentry's motion for summary judgment limited to the failure of Sentry's prima facie showing; (2) a "Supplemental Authority" regarding Sentry's failure to make a prima facie showing; (3) "Supplemental Authority on the Fatal Defect of [Sentry's] Motion for Summary Judgment"; (4) a "Supplemental Response to Motion for Summary Judgment Based on [Sentry's] Submission of Record That [Sentry] Has Failed to Make A Prima Facie Showing and [Knowledge's] Motion for Leave to File A Full Response to [Sentry's] Motion for Summary Judgment." Appellant's Appendix at iv-vi.

After a hearing, the trial court entered an order denying Knowledge's motion to disqualify Sentry's counsel, denying Knowledge's motion to strike Sentry's motion for summary judgment, granting Sentry's motion to strike Knowledge's improper submission of evidence, striking Knowledge's supplemental authority as to Sentry's failure to make a prima facie showing "to the extent that the legal authority cited therein has been vacated and the citation to it is therefore improper," and granting Sentry's motion for attorney fees. Appellant's Appendix at 2. Further, the trial court granted Sentry's motion for summary judgment. The trial court noted that Knowledge had failed to file a response or designate evidence to meet its burden under Ind. Trial Rule 56. The trial court found no genuine issue of material fact regarding the following:

\* \* \* \* \*

a. On or about July 1, 2002, [Sentry] issued an insurance contract to [Knowledge]. Pursuant to the terms, conditions and requirements of the policy, [Knowledge] was required to permit [Sentry] to examine their books and records as often as may reasonably be required.

b. Pursuant to the terms, conditions and requirements of the policy, [Knowledge] was required to cooperate with [Sentry] in the investigation or settlement of the claim.

c. Pursuant to the terms, conditions and requirements of the policy, [Sentry] was granted the right to examine any insured under oath while not in the presence of any other insured and at such times as may reasonably be required.

d. On February 21, 2004, Nigam Arora, owner and principal officer of [Knowledge], sent correspondence to [Sentry's] counsel indicating his availability for examination under oath on several dates, includ-

ing March 30, 2004, at any reasonable time.

e. On March 9, 2004, [Sentry], by counsel, sent correspondence to Nigam Arora acknowledging his available dates and provided him with notice that his Examination Under Oath would proceed on March 30, 2004, and further indicated the proper time and location.

f. Nigam Arora did not present himself for Examination Under Oath at the noticed time and location on March 30, 2004.

g. On April 12, 2004, [Sentry], by counsel, sent correspondence to Nigam Arora notifying him that [Sentry] would provide another opportunity for the Examination Under Oath on April 29, 2004, and further advising of the proper time and location.

h. Nigam Arora did not present himself for Examination Under Oath at the noticed time and location on April 29, 2004.

i. Lovii Arora has never scheduled nor submitted to an Examination Under Oath.

j. [Knowledge] has not provided [Sentry] with the books or records expressly requested by [Sentry] for inspection as is [Sentry's] right under the policy.

k. There is no evidence that the failures of Nigam Arora to attend the properly scheduled and noticed Examinations Under Oath were the result of a valid reason or an inability to comply with the policy requirement.

l. The designated evidence shows there is no genuine issue of material fact as to the Complaint for Declaratory Judgment as to the breach of

the requirements of the insurance policy by [Knowledge].

m. The designated evidence shows there is no genuine issue of material fact as to the counterclaim of [Knowledge] for bad faith against [Sentry].

n. The designated evidence shows there is no genuine issue of material fact as to the counterclaim of [Knowledge] for punitive damages against [Sentry].

5. [Sentry] is entitled to judgment as a matter of law on the issues as to each claim contained in [Sentry's] Complaint for Declaratory Judgment.

6. [Sentry] is entitled to judgment as a matter of law on the issues as to each claim contained in [Knowledge's] Counterclaim.

7. There is no just cause to delay entry of final judgment in favor of [Sentry] and against [Knowledge].

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment, filed by [Sentry], be and hereby is GRANTED.

THE COURT hereby enters summary judgment in favor of [Sentry] and against [Knowledge] as to each and every claim contained in [Sentry's] Complaint for Declaratory Judgment and as to each and every claim contained in [Knowledge's] Counterclaim, each party to bear his own costs.

Appellant's Appendix at 2–5.

I.

■ The first issue is whether the trial court erred by denying Knowledge's motion to disqualify counsel and motion to strike Sentry's motion for summary judgment. Ind. Rule of Professional Conduct 3.7(a) provides:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

According to Knowledge, Sentry's counsel should have been disqualified and Sentry's motion for summary judgment should have been stricken because Sentry's counsel was a necessary witness. During Sentry's investigation of Knowledge's claim, Sentry's counsel corresponded with Knowledge regarding the need for examinations under oath and the inspection of various items. As part of its designation of evidence in support of its motion for summary judgment, Sentry submitted the correspondence between Sentry's counsel and Knowledge. The correspondence was authenticated through Knowledge's responses to requests for admissions. Sentry's counsel did not submit an affidavit and did not testify in any manner.

The threshold question under Rule 3.7 is whether Sentry's counsel was a necessary witness. *Harter v. University of Indianapolis*, 5 F.Supp.2d 657, 663 (S.D.Ind.1998). "A necessary witness is not the same thing as the 'best' witness." *Id.* at 665. "If the evidence that would be offered by having an opposing attorney testify can be elicited through other means, then the attorney is not a necessary witness. In addition, of course, if the testimony is not relevant or is only marginally relevant, it certainly is not necessary." *Id.*

The court addressed a similar issue in *Harter*, where an attorney's letters to her client's employer were at issue in the client's employment discrimination action. *Id.* at 659. The court noted:

Under the terms of the ADA, the focus at trial is on the *employer's* actions, and specifically on whether the employee can prove by a preponderance of the evidence that the employer was responsible for the breakdown of the dialogue concerning reasonable accommodations. The facts that are most central to this inquiry are the objective circumstances the university faced—including the communications it received from Harter [the client/employee] and any persons speaking for him, including his attorney. There is no apparent reason why testimony from Keller [the attorney] about her subjective motives, purposes, or thoughts would be essential in this inquiry. There is a long paper trail in this case. Keller said what she said and wrote what she wrote. Her testimony is not necessary to prove that those communications occurred. Questions about why she wrote what she wrote are at best only marginally relevant except to the extent that she communicated her reasons to the university. Just as a party's private beliefs are irrelevant in interpreting an ambiguous contract-what matters are objective manifestations of intentions-what is most relevant here is the objective situation presented to the university and whether the university's response to that was a reasonable and good faith response....

\* \* \* \* \*

Finally, the university argues that Keller's testimony is necessary because testimony from other witnesses (such as university personnel or attorney Sifferlen) about what Keller said would be hearsay. This argument has little merit. First, what is most relevant here is the course of communications. If the com-

munications by Keller are not offered to prove the truth of her out-of-court statements, they would fall outside the definition of hearsay. Fed.R.Evid. 801(c). Second, even if the university wants to use Keller's statements to prove the truth of what she said, her statements would be admissions attributable to Harter because they would have been made by his agent within the scope of her agency. See Fed.R.Evid. 801(d)(2)(D).

At this time, therefore, the university has not shown that attorney Keller is a necessary witness in this case. There remains a possibility of course that events could unfold so that her testimony might be necessary on some points....

*Id.* at 666–667.

We find the *Harter* decision instructive. Sentry argues that its counsel was not a necessary witness because representatives of Sentry and Knowledge "were the witnesses who would testify as to the facts giving rise to this matter." Appellee's Brief at 20. The issue here is Knowledge's response to Sentry's requests for documents and examinations under oath. The only basis Knowledge offered in its motion to disqualify Sentry's counsel was that Sentry's counsel had failed to return Arora's calls, and Arora could testify regarding his calls. Knowledge has not shown that Sentry's counsel was a necessary witness. We conclude that the trial court did not abuse its discretion by denying Knowledge's motion to disqualify Sentry's counsel or by denying Knowledge's motion to strike. *See, e.g., Harter,* 5 F.Supp.2d at 666–667.

## II.

The next issue is whether the trial court erred by granting Sentry's motion for summary judgment. Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.,* 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974.

We also note that, when a party fails to file a response within thirty days, the trial court may not consider materials filed thereafter. *Monroe Guar. Ins. Co. v. Magwerks Corp.,* 829 N.E.2d 968, 974 (Ind. 2005). A party moving for summary judgment bears the initial burden of showing no genuine issue of material fact and the appropriateness of judgment as a matter of law. *Id.* at 975. If the movant fails to make this prima facie showing, then summary judgment is precluded regardless of whether the non-movant designates facts and evidence in response to the movant's motion. *Id.*

Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk,* 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

According to Knowledge, the designated evidence does not show that: (A) it breached its duty to allow Sentry to conduct examinations under oath; and (B) it failed to provide books or records requested by Sentry. These types of duties were recently discussed by the Indiana Supreme Court in *Morris v. Economy Fire & Casualty Co.*, 848 N.E.2d 663 (Ind.2006), *reh'g denied*. There, the property loss provisions in the insurance policy contained express conditions entitled "Your Duties After Loss," which begin, "In case of a loss to covered property, you must see that the following are done:...." *Morris*, 848 N.E.2d at 666. Among the explicit duties then listed were those in subsection (f), which required that the insured must:

as often as we reasonably require:

(1) show the damaged property;

(2) provide us with records and documents we request and permit us to make copies; and

(3) submit to examination under oath, while not in the presence of any other insured, and sign the same.

*Id.* In a separate express condition applicable to the property loss coverage, the policy contract stated: "No action can be brought unless the policy provisions have been complied with...." *Id.*

■ The Indiana Supreme Court noted that these provisions were not "cooperation clauses," which require the insured to assist the insurer in investigating and defending a claim. *Id.* Rather, the provision is "an entirely separate condition that explicitly requires the policyholder to perform specific duties." *Id.* "While disputes regarding alleged breaches of an insured's duty under a separate 'cooperation clause' may necessitate consideration of resulting prejudice to the insurance company, such prejudice is not a necessary consideration in determining the enforceability of other insurance policy provisions." *Id.* (citing

*Miller v. Dilts*, 463 N.E.2d 257, 265 (Ind. 1984)).

The insured in *Morris* refused to submit to an examination under oath until they were given transcripts of their previously recorded statements. *Id.* Holding that the insured had breached the contract as a matter of law, the court noted that "the contract does not provide that an insured can impose this prerequisite upon the insurer before complying with agreed duties." *Id.* at 666–667. "Compliance [with the request for an examination under oath] was not optional or subject to a trial court determination of reasonableness." *Id.* at 667. The policy contract did not "impose an explicit general 'reasonableness' requirement on the insurer regarding *what* documentation the insurer might demand of the insured or in *what* context the insurer might ask for an examination under oath." *Id.* (emphasis in original). Consequently, the court concluded that the insured breached the contract with the insurer and affirmed the trial court's entry of summary judgment in favor of the insurer. *Id.*

■ The policy here provided the following:

3. DUTIES IN THE EVENT OF LOSS OR DAMAGE

a. You must see that the following are done in the event of loss or damage to Covered Property:

\* \* \* \* \*

(6) As often as may be reasonably required, permit [Sentry] to inspect the property proving the loss or damage and examine [the insured's] books and records.

\* \* \* \* \*

(8) Cooperate with us in the investigation or settlement of the claim

* * * * *

b. We may examine any insured under oath while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim including an insured's books and records. In the event of an examination, an insured's answers must be signed.

Appellee's Appendix at 48–49. Although Knowledge attempts to characterize this provision as a cooperation clause rather than a clause requiring the insured to perform specific duties, we find little difference between the provisions here and the provisions in *Morris* that required the insured to perform specific duties. Consequently, compliance with Sentry's requests under this provision was not optional or subject to a trial court determination of reasonableness. *Morris*, 848 N.E.2d at 667. With *Morris* in mind, we now examine Knowledge's claims.

█ Under the section entitled "Duties in the Event of Loss or Damage," the policy provided that Sentry "may examine any insured under oath while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim including an insured's books and records. In the event of an examination, an insured's answers must be signed." Appellee's Appendix at 48–49. The desig-

nated evidence demonstrates that, as part of its investigation, Sentry requested on December 9, 2003, that Knowledge provide it with originals or copies of certain documents in connection with an examination under oath of Knowledge's president, Nigam Arora.[3] On January 12, 2004, Knowledge responded that Sentry's request for documents was "unduly burdensome and not commensurate with what is to be reasonably expected." Appellant's Appendix at 37. Further, Knowledge responded that Nigam had been interviewed extensively and "[i]f an oath was required; it was Sentry's responsibility." *Id.* Knowledge suggested that it would stipulate that the "earlier interviews were truthful as though they were under oath. . . ." *Id.* at 38. On January 20, 2004, Sentry, through counsel, noted that "[t]here are questions and issues which have not yet been resolved and the investigation of Sentry Insurance cannot be completed until the requested materials have been provided and the separate examinations under oath conducted." *Id.* at 39. Sentry responded that the earlier recorded statement could not substitute for an examination under oath and requested that Knowledge contact it to make arrangements for the examinations. On February 21, 2004, Arora responded that he was "willing and ready to further cooperate including you taking my deposition and providing additional documents, as long as you demonstrate

---

3. Knowledge also argues that the trial court erred by finding that Lovii Arora breached the contract by failing to appear for an examination under oath. The trial court found that Lovii never scheduled or submitted to an examination under oath, but the trial court did not find that Lovii's failure to submit to an examination under oath was a breach. *Cf.* Appellant's Appendix at 4 ("There is no evidence that the failures of Nigam Arora to attend the properly scheduled and noticed Examination Under Oath were the result of a valid reason or inability to comply with the

policy requirement."). Further, we note that the designated evidence demonstrates that, in December 2003, Nigam Arora informed Sentry that Lovii could not participate in an examination under oath due to medical conditions. Sentry requested a doctor's note or report confirming that Lovii could not participate in the examination and the reason that she was unable to participate. In March 2004, Lovii provided Sentry with a doctor's note, which provided that subjecting her to a deposition "for the next three (3) months will be injurious to her health." *Id.*

that it is in good faith on your part and is commensurate with the facts." Appellee's Appendix at 187. Arora suggested a meeting and provided several possible dates, including March 30, 2004. On March 9, 2004, Sentry sent a letter to Arora scheduling his examination under oath for 1:00 p.m. on March 30, 2004. Arora did not appear for the examination under oath on March 30, and Sentry rescheduled the examination for April 29, 2004. When Arora did not appear, Sentry then rescheduled the examination for May 25, 2004. However, Arora did not appear for the May 25th examination either. According to Knowledge's admissions, Arora was "fully willing to present himself for examination" but Sentry "refused to make appropriate arrangements for Mr. Arora to attend the examination[s]." Appellant's Appendix at 15–17.

The designated evidence demonstrates that Arora did not submit to an examination under oath despite Sentry's repeated requests. Sentry was entitled to an examination under oath under the policy, and Arora's offer to stipulate that his previous interview was under oath was ineffective. As in *Morris,* "[c]ompliance [with the request for an examination under oath] was not optional or subject to a trial court determination of reasonableness." *Morris,* 848 N.E.2d at 667. The designated evidence demonstrates that Knowledge breached the contract with Sentry by failing to present Arora for an examination under oath. Because Knowledge breached the contract with Sentry by failing to present Arora for an examination under oath, the trial court did not err by granting Sentry's motion for summary judgment. *See, e.g., id.* Because the summary judg-

ment for Sentry is sustainable based upon the failure to submit to the examinations under oath, we need not address Knowledge's argument that the trial court erred by finding that it breached the contract by failing to produce certain documents requested by Sentry.

## III.

■ The next issue is whether the trial court erred by granting Sentry's motion for summary judgment regarding Knowledge's counterclaim. Knowledge's counterclaim against Sentry was a claim for bad faith and punitive damages. Indiana law has long recognized a legal duty, implied in all insurance contracts, for the insurer to deal in good faith with its insured. *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 518 (Ind.1993). A good faith dispute concerning insurance coverage cannot provide the basis for a claim in tort that the insurer breached its duty to deal in good faith with its insured. *Magwerks Corp.,* 829 N.E.2d at 976. As a general proposition, "[a] finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Id.* at 977. This obligation of good faith and fair dealing includes the obligation to refrain from: (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in payment; (3) deceiving the insured; and (4) exercising an unfair advantage to pressure an insured into settlement of his claim. *Hickman,* 622 N.E.2d at 519.[4]

■ Knowledge based its claim upon Sentry's "unwarranted denial" of its insurance claim. Appellant's Supp. Appendix at

---

4. In *Magwerks,* the insured asserted that the duty to deal in good faith also included the "manner of handling the claim." *Magwerks,* 829 N.E.2d at 976. Because neither party provided the court with much guidance on this issue, the court declined to expand on the extent of the duty an insurer owes its injured beyond those already expressed in *Hickman. Id.*

10. On appeal, Knowledge argues that the demand for documents in connection with the examination under oath of Arora raises an issue of bad faith, that Sentry's failure to repeat its attempts at an examination under oath after Knowledge retained counsel "smells of bad faith and overreaching," and that an alleged misstatement in Sentry's motion for summary judgment "certainly raises an issue of bad faith." Appellant's Brief at 26.

We held above that the trial court did not err by granting summary judgment to Sentry on its claim that Knowledge breached the contract with Sentry by failing to submit to examination under oath. Sentry had a right under the policy to request the examination under oath prior to paying Knowledge's claim. The designated evidence demonstrated that Sentry did not make an unfounded refusal to pay policy proceeds and did not cause an unfounded delay in payment. There were no genuine issues of material fact, and Sentry was entitled to summary judgment as a matter of law on Knowledge's counterclaim for bad faith.

## IV.

The final issue is whether the trial court abused its discretion by awarding sanctions to Sentry. After Knowledge filed its motion to disqualify counsel and motion to strike Sentry's motion for summary judgment, Sentry filed a motion to strike Knowledge's improper submission of evidence, an objection to the motion to disqualify counsel, and a petition for fees pursuant to Ind.Code § 34–52–1–1. Ind. Code § 34–52–1–1(b) provides:

In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

The petition for fees alleged that Knowledge: (1) failed to comply with Ind. Trial Rule 36 relating to its responses to Requests for Admissions; (2) failed to comply with time limitations provided by Ind. Trial Rule 56; (3) failed to comply with the time extension given by the trial court; and (4) with the filing of its motion to disqualify counsel and motion to strike, sought to improperly disqualify Sentry's counsel, misrepresented to the trial court that Sentry's counsel testified, and sought to improperly place unverified documents before the trial court. Sentry sought attorney fees because Knowledge's motion was frivolous, unreasonable, groundless, and in bad faith. The trial court granted Sentry's motion for attorney fees and ordered Knowledge to pay Sentry's attorney fees in the amount of $936.00.

■ An award of attorney's fees under Ind.Code § 34–52–1–1 is afforded a multi-step review. *Emergency Physicians of Indianapolis v. Pettit,* 714 N.E.2d 1111, 1115 (Ind.Ct.App.1999), *adopted in relevant part by* 718 N.E.2d 753 (Ind.1999). First, we review the trial court's findings of fact under the clearly erroneous standard, and second, we review de novo the trial court's legal conclusions. *Id.* Finally, we review the trial court's decision to award attorney's fees and the amount thereof under an abuse of discretion standard. *Id.* Here, the trial court did not enter findings. The trial court did not expressly indicate the legal conclusion on which its award of attorney's fees was based. Because Sentry's request was

based on four grounds, we view the trial court's order as an implicit conclusion that Knowledge's motions were frivolous, unreasonable, and groundless or in bad faith. Thus, we review this conclusion de novo. *Id.*

For purposes of awarding attorney fees pursuant to Ind.Code § 34–52–1–1, "a claim is 'frivolous' if it is made primarily to harass or maliciously injure another, if counsel is unable to make a good faith and rational argument on the merits of the claim, or if counsel is unable to support the action by a good faith and rational argument for extension, modification, or reversal of existing law." *Parks v. Madison County,* 783 N.E.2d 711, 723 (Ind.Ct.App.2002), *reh'g denied, trans. denied.* "A claim is 'unreasonable' if, based upon the totality of the circumstances, including the law and facts known at the time of filing the claim, no reasonable attorney would consider the claim justified or worthy of litigation." *Id.* "A claim is 'groundless' if no facts exist which support the legal claim relied upon and presented by the losing party." *Id.* "Finally, a claim is litigated in 'bad faith' if the party presenting the claim is affirmatively operating with furtive design or ill will." *Id.*

Here, Knowledge filed a motion to disqualify Sentry's counsel, stating that "the testimony of [Sentry's counsel] appears to [be] the primary testimony in support of [the] Motion of [sic] Summary Judgment" and "[Sentry's counsel] states that Defendant never appeared for examination." Appellant's Supp. Appendix at 29. Knowledge cited no authority in support of its assertion that Sentry's counsel should be disqualified except for Rule 3.7 of the Ind. Rules of Professional Conduct, but Knowledge did not explain how Rule 3.7 applied to the matter. Knowledge's motion also requested that the trial court strike Sentry's motion for summary judg-

ment pursuant to Ind. Trial Rule 12(F) without any explanation. Furthermore, Knowledge filed this motion to strike the motion for summary judgment after missing the deadline to respond to Sentry's motion for summary judgment. The trial court could have concluded that Knowledge's actions were frivolous, unreasonable, or groundless because of Knowledge's misstatements, lack of a good faith and rational argument, and lack of support for its claims. I.C. § 34–52–1–1. We cannot say that the trial court abused its discretion by awarding attorney fees to Sentry. *See, e.g., Stoller v. Totton,* 833 N.E.2d 53, 56 (Ind.Ct.App.2005) (affirming the award of attorney fees where the defendant's affirmative defense was frivolous, unreasonable, and groundless), *trans. denied.*

For the foregoing reasons, we affirm the trial court's judgment for Sentry.

Affirmed.

NAJAM, J., and KIRSCH, C.J. concur.