# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 25 2019, 6:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Nicholas J. Hursh
Shambaugh, Kast, Beck & Williams, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Michael A. Setlak
Perry D. Shilts
Shilts & Setlak, LLC
Fort Wayne, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gregory Rietdorf and Brenda Rietdorf, | September 25, 2019 |
| *Appellants/Cross-Appellees - Petitioners,* | Court of Appeals Case No. 19A-MI-695 |
| v. | Appeal from the Allen Superior Court |
| Michelle Rietdorf, | The Honorable Charles F. Pratt, Judge |
| *Appellee/Cross Appellant - Respondent.* | The Honorable Sherry A. Hartzler, Magistrate |
| | Trial Court Cause No. 02D08-1801-MI-26 |

**Robb, Judge.**

# Case Summary and Issues

Gregory and Brenda Rietdorf (collectively, "Grandparents") filed a petition seeking grandparent visitation with their grandson, T.R. The trial court granted the petition but imposed certain conditions and restrictions on Grandparents' visitation. The trial court also ordered Grandparents to pay $10,000 of Mother's attorney fees. Grandparents appeal the trial court's order, raising the following consolidated issues for our review: 1) whether the trial court erred in placing conditions on Grandparents' visitation with T.R., and 2) whether the trial court erred in awarding attorney fees to Mother. Mother cross-appeals, requesting attorney fees under Indiana Appellate Rule 66(E) for defending this appeal. With respect to Grandparents' appeal, we conclude the trial court's order granting Grandparents visitation with T.R. under certain conditions was not clearly erroneous, but there is no statutory authority for the trial court's award of attorney fees to Mother. Therefore, the trial court's order is affirmed with respect to visitation and reversed as to attorney fees. On Mother's cross-appeal, we conclude appellate damages are appropriate in this case and remand to the trial court for a determination of the amount of appellate damages to which Mother is entitled.

# Facts and Procedural History[1]

---

[1] Grandparents have not stated their facts in accordance with the standard of review, instead stating the facts so as to portray themselves in the best possible light. However, Mother has gone overboard in criticizing

[2]    T.R. was born on January 23, 2016, during Mother's marriage to Anthony Rietdorf ("Father"). Father is the son of Grandparents. During Mother and Father's marriage, the parties enjoyed a close relationship that included frequent family dinners with Grandparents and extended Rietdorf family gatherings. After T.R.'s birth, this close relationship continued, and the parties would see each other two to three times per month. Sometimes, Mother and Father were present while Grandparents visited with T.R. and sometimes, Grandparents visited with T.R. alone. Mother knew Grandparents to be good caretakers at that time and thought the relationship "felt healthy." Transcript, Volume 2 at 27.

[3]    On September 11, 2016, Father passed away from injuries sustained in an off-road utility vehicle accident. Mother was driving the vehicle at the time of the accident. After Father's death, the relationship between Mother and Grandparents deteriorated rapidly, in part because Grandparents blamed Mother for Father's death. When Father was alive, Grandmother regularly took T.R. from swim school to his babysitter because Mother had to work but after Father's funeral, she told Mother she would no longer be able to do that. In October, Mother and Grandparents had a face-to-face meeting that lasted approximately three hours. Following the meeting, Mother sent Grandparents a letter because she was "very hurt by [the] 3 hour interrogation last week and

Grandparents' statement of facts when simply stating the facts appropriately in her own brief would have been sufficient.

must protect myself and [T.R.] from any toxic relationship[,]" Exhibits, Volume 1 at 47, and felt that "we all needed to have a third-party interaction and counseling to come together to have a healthy relationship for the best interest of [T.R.]." Tr., Vol. 2 at 47. Mother's letter stated that she would be unable "to continue further conversations . . . until [Grandparents] are ready to move forward to a healthy relationship with me." Exhibits, Vol. 1 at 47. Mother asked Grandparents to "[p]lease contact me when you are ready to move forward" and suggested mediation or counseling in a neutral location. *Id.* Mother's intention was not to quash the relationship between Grandparents and T.R. *See* Tr., Vol. 2 at 18-19.

[4]     Grandparents did not reach out to Mother after receiving her letter and by their own decision, have not seen T.R. since receiving Mother's letter. After receiving the letter, Grandfather felt "it was very clear . . . that [Mother] cut off the relationship . . . with [T.R.] and any hope of meeting again to work out our differences." *Id.* at 207. Grandmother indicated that at the time they received the letter, she did not want to work on having a healthy relationship with Mother. *See id.* at 136-37. In fact, she did not want any further relationship with Mother. *See id.* at 168-69. Instead, Grandparents called a family meeting and told Grandfather's siblings that "either you're on [our] side or you're on [Mother's] side[,]" *id.* at 103; passed out a "poison file" of information about Mother to the Rietdorf siblings at that meeting, *id.* at 198; refused to attend extended family gatherings because Mother was still invited to attend even after the family meeting; specifically declined to attend a gathering at which a group

family photo was to be taken to celebrate the Rietdorf patriacrch's ninetieth birthday but said "they were sure that [Mother] would immensely enjoy it and that [the family] would be honored by her presence[,]" *id.* at 195; and chided their daughter, Amber, for choosing to remain friends with Mother, began arranging to see Amber's children during her ex-husband's parenting time so they did not have to see Amber, and believe Amber has been "working against [them] in this grandparents['] procedure[,]" *id.* at 160. Mother took T.R. to "every family gathering hoping that [Grandparents] would come[.]" Tr., Vol. 3 at 51.

[5] In January 2018, Grandparents filed a petition for grandparent visitation. Receiving this petition was the first time Mother had heard from Grandparents since October 2016. Mother acknowledges that she and Grandparents may never see eye to eye, but she is willing for them to see T.R. "[w]hen they are in a mentally healthy place[.]" Tr., Vol. 2 at 25. Currently, she does not believe they are in that place, because of "things that they have said directly to me and to family members and written that have tried to tarnish my reputation and they think I killed my husband [and] I do not want my child around that." *Id.* at 31. Mother has "serious concerns that they will say something to [T.R.] and once something is said to him" it cannot be unsaid or unheard and "he could be damaged at any age from this." *Id.* at 54. Mother is "not trying to withhold [T.R.] from them[,]" *id.* at 23, but she does not want Grandparents to have immediate unsupervised time with him. Instead, she would "like to see [Grandparents] have therapy grief counseling[;] let go of their accusations and

blame[;] undergo psychological exams paid for by them[;] after a psychologist gives the okay[,] supervised visits[;] and after a psychologist deems that it is still okay they may have additional unsupervised visits." *Id.* at 56-57.

[6] Grandmother indicated that she would be willing to take a psychological evaluation and attend counseling if recommended by the evaluation. *Id.* at 153-54. She also indicated she thought gradually being reintroduced to T.R. over short periods of time would be appropriate. Grandfather also indicated he would be willing to take a psychological evaluation if required, *id.* at 222; tr., vol. 3 at 19, but believes Mother's request for supervised visitation is "totally ridiculous[,]" tr., vol. 2 at 216.

[7] Following a hearing conducted over three days in August and September of 2018, the trial court issued its Findings of Fact, Conclusions of Law and Judgment. In relevant part, the trial court found that "immediate and extended familial relations have suffered . . . due in large part to the actions of [Grandparents]." Appealed Order at 2, ¶ 16. The trial court also found that Grandparents "would have had an opportunity to visit with [T.R.] had they attended family functions for which they were welcome[; but] did not make a demand or request for contact with [T.R.] until the initiation of this action[.]" *Id.* at 2-3, ¶¶ 18, 22. The trial court concluded the Grandparents had "not established the heightened standard of proof by [which they] must rebut the presumption" that Mother is fit and acting in T.R.'s best interests. *Id.* at 5, ¶ 47. The trial court further concluded that subjecting T.R. to the "hostile environment" Grandparents' feelings about Mother have created would not be

in his best interests. *Id.* at ¶¶ 42, 43. But giving "some weight" to the fact that Mother had not denied Grandparents contact with T.R. but was in fact willing to facilitate visitation if Grandparents participated in individual therapy and the visits were, at least initially, therapeutically supervised, *id.* at ¶ 48, the court granted the petition for grandparent visitation under the following conditions:

- Grandparents obtain separate psychological evaluations at their expense and follow all recommendations as it relates to individual counseling, grief counseling, and therapeutic reunification counseling, *id.* at 6, ¶ 51(a);

- Grandparents participate in individual counseling, *id.* at ¶ 51(c); and

- Grandparents sign necessary HIPAA release forms allowing Mother to access the psychological evaluations and recommendations and to verify Grandparents' participation in individual counseling, *id.* 6, ¶ 51(b), (c).

As for visitation, the trial court ordered that visitation be phased in as follows:

- After beginning individual counseling, Grandparents would have at least four one-hour therapeutic supervised visits, occurring every other week at their cost at Family Connections, until their individual counselor gives permission to proceed, *id.* at ¶ 51(d);

- Grandparents would then have four two-hour supervised visits, occurring every other week in a public location with Amber supervising, or, if Amber is unwilling or unable to supervise, at their cost at Family Connections, *id.* at ¶ 51(e); and

- Grandparents would then have unsupervised visits of increasing length as T.R. grows older, *id.* at ¶ 51(f)–(i).

Finally, the trial court ordered that Grandparents not discuss details of Father's passing with T.R. unless Mother specifically consented to such conversations and that all parties refrain from disparaging one another in T.R.'s presence. *Id.* at 7, ¶ 51(k)–(l).

[8] Both Mother and Grandparents filed Motions for Attorney Fees. The trial court concluded that Mother had substantially prevailed in her defense against the Grandparents' petition for grandparent visitation and ordered Grandparents to be responsible for $10,000 of Mother's attorney fees. Grandparents now appeal the visitation order and the attorney fee order. Mother requests an award of appellate attorney fees for defending this appeal.

# Discussion and Decision

## I. Grandparent Visitation

### A. Standard of Review

[9] When ruling on a petition for grandparent visitation rights, the court must enter findings of fact and conclusions thereon in accordance with Trial Rule 52. *See* Ind. Code § 31-17-5-6; Ind. Trial Rule 52(A). We conduct a two-tiered review of those findings, first determining "whether the evidence supports the findings and then whether [the] findings support the judgment." *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009). We do not reweigh the evidence, *Stonger v.*

*Sorrell*, 776 N.E.2d 353, 358 (Ind. 2002), and must give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses[,]" T.R. 52(A). We "shall not set aside the findings or judgment unless clearly erroneous[.]" T.R. 52(A). Findings are clearly erroneous when the record contains no facts to support them, either directly or by inference. *Fischer v. Heymann*, 12 N.E.3d 867, 870 (Ind. 2014). However, in this case, Grandparents have not challenged any of the factual findings, and we therefore accept them as proven. *Coles v. McDaniel*, 117 N.E.3d 573, 576 (Ind. Ct. App. 2018). "A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment." *K.I.*, 903 N.E.2d at 457. A judgment is also clearly erroneous when the court "applies the wrong legal standard to properly found facts." *Id*. We give substantial deference to the trial court in a family law matter. *Wilder-Newland v. Kessinger*, 967 N.E.2d 558, 560 (Ind. Ct. App. 2012), *trans. denied*.

## B. Visitation Order

[10] "Indiana has enacted legislation . . . recogniz[ing] that 'a child's best interest is often served by developing and maintaining contact with his or her grandparents.'" *In re Visitation of L-A.D.W.*, 38 N.E.3d 993, 997 (Ind. 2015) (quoting *K.I.*, 903 N.E.2d at 462). Indiana Code section 31-17-5-1 gives grandparents the right to seek visitation, and a court may grant visitation if it "determines that visitation rights are in the best interests of the child." Ind. Code § 31-17-5-2(a). Notably, however, natural parents have a "fundamental constitutional right to direct their children's upbringing without undue

governmental interference[.]" *In re Visitation of M.L.B.*, 983 N.E.2d 583, 586 (Ind. 2013). Thus, to "strik[e] a balance" between the interests of parents and children, visitation orders must address:

> (1) a presumption that a fit parent's decision about grandparent visitation is in the child's best interests (thus placing the burden of proof on the petitioning grandparents);

> (2) the "special weight" that must therefore be given to a fit parent's decision regarding nonparental visitation (thus establishing a heightened standard of proof by which a grandparent must rebut the presumption);

> (3) "some weight" given to whether a parent has agreed to some visitation or denied it entirely (since a denial means the very existence of a child-grandparent relationship is at stake, while the question otherwise is merely how much visitation is appropriate); and

> (4) whether the petitioning grandparent has established that visitation is in the child's best interests.

*Id.* (emphasis omitted). The Grandparent Visitation Act (the "Act") "contemplates only occasional, temporary visitation that does not substantially infringe on a parent's right to control the upbringing, education, and religious training of their children." *K.I.*, 903 N.E.2d at 462 (internal quotations and citations omitted).

[11] Grandparents are entitled to seek visitation rights because their son, T.R.'s father, is deceased. Ind. Code § 31-17-5-1(a)(1). They argue that the trial court

erred in granting their petition but imposing conditions on their visitation with T.R., as the Act does not "address supervised or therapeutic, supervised visitation rights." Brief of Appellants at 14. Instead, they assert the Act "generally references authority to grant visitation rights, and the intent and purpose with that authority is that those visitation rights [be] without restriction[.]" Id. Grandparents specifically challenge that the initial visits were to be therapeutic and supervised visits and that they were ordered to obtain psychological evaluations and participate in counseling.

[12] Citing Indiana Code section 31-17-4-1(a), which concerns *parenting time,* and which states that "a parent not granted custody of the child is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development[,]" Grandparents argue that a court may not restrict *grandparent visitation* unless there is a showing that such visitation will endanger the child. They assert that the evidence does not support, and the trial court did not find, endangerment here. There is a fundamental difference between the rights of parents and the rights of grandparents: parents have a constitutionally recognized fundamental liberty interest in the upbringing of their children, but grandparents are not afforded the same legal rights or obligations as parents and do not have a constitutional liberty interest in visitation with their grandchildren. *In re L-A.D.W.*, 38 N.E.3d at 998. Instead, a grandparent's right to seek visitation is solely a product of legislation and "grandparent visitation is not to be confused

with the rights of the custodial parent." *Id.* Accordingly, section 31-17-4-1(a), which allows restriction of parenting time only in a case showing endangerment, has no application to this grandparent visitation case.

[13] From our review of caselaw, it appears that ordering supervised visits for grandparents is a common practice. *See, e.g., In re Guardianship of C.R.*, 22 N.E.3d 657, 660 (Ind. Ct. App. 2014) (on remand from an appeal in which this court instructed the trial court to modify its order for grandparent visitation to provide, *inter alia*, that visitation will be supervised, trial court ordered that grandparents were entitled to exercise supervised visitation up to twelve hours per month); *In re Visitation of C.S.N.*, 14 N.E.3d 753, 756 (Ind. Ct. App. 2014) (trial court ordered that grandparents and grandchild have a "six-week transition period of both supervised and unsupervised visits" before grandparents were entitled to a regular schedule of unsupervised visitation). "[I]n the case of grandparent visitation, the custodial parent's right to direct the upbringing of the child remains paramount." *In re L-A.D.W.*, 38 N.E.3d at 998. Just as the amount of grandparent visitation is left to the sound discretion of the trial court, *K.I.*, 903 N.E.2d at 462, the conditions under which visitations will occur should also be within the trial court's discretion, as the paramount consideration is that the visitation be in the child's best interests, Ind. Code § 31-17-5-2(a). "[T]rial courts should be able to consider the various circumstances presented in each individual case to determine what is in the child's best interest." *In re L-A.D.W.*, 38 N.E.3d at 1001. Based on the trial court's findings, conclusions, and the applicable law, the trial court's judgment

imposing conditions on Grandparents' visitation with T.R. is not clearly erroneous.[2]

[14] We must also note that we agree with Mother that Grandparents' assertion that the trial court does not have legal authority to place conditions on their visitation "implies that the trial court had only two options, either to deny the Grandparents' Petition or to grant the Petition and identify a [visitation] schedule without restrictions." Brief of Appellee at 20. And in this case, it is clear from the trial court's findings that without the restrictions, it would have denied the petition. The trial court presumed that as a fit parent, Mother's decision was in T.R.'s best interests and concluded that Grandparents had not rebutted that presumption because it was not persuaded that Grandparents could "keep their feelings about [Mother] separate and distinct from their time with [T.R.] given the campaign undertaken against [Mother.]" Appealed Order at 5, ¶ 43. The trial court took particular note that Grandparents had "chosen a course of action in which they have willingly *not* participated" in T.R.'s life until filing this action, *id.* at ¶ 48 (emphasis added), and concluded it would not be in T.R.'s best interests for Grandparents to have unfettered access to him unless and until they sought psychological intervention. Were it not for the trial

---

[2] As for the condition that Grandparents obtain psychological evaluations and attend counseling, Grandparents indicated they would be willing to undergo such evaluations and to attend counseling if the evaluations recommended it. *See* Tr., Vol. 2 at 153-54, 222; Tr. Vol. 3 at 19. The trial court noted as much in its order. *See* Appealed Order at 4, ¶ 31. This is essentially invited error: Grandparents cannot claim the trial court erred when it ordered evaluations and counseling they agreed to undergo. Invited error is not subject to appellate review. *Hickey v. Hickey*, 111 N.E.3d 242, 246 (Ind. Ct. App. 2018).

court giving some weight to Mother's recognition of the importance of Grandparents' role in T.R.'s life and her willingness to allow visitation under certain conditions, the trial court's other findings and conclusions would not have supported granting the petition for grandparent visitation. Thus, Grandparents have essentially looked a gift horse in the mouth by seeking to strike the very conditions that allow them to have visitation with T.R. at all.

## II. Attorney Fees

The trial court ordered Grandparents to pay $10,000 of Mother's attorney fees. The order does not state the authority upon which the trial court relied to award attorney fees, but it makes findings about each party's employment status and concludes that Mother "has substantially prevailed in her defense" against Grandparents' petition. Appealed Order at 7, ¶ 54. "As such, and in consideration of the resources and income of the parties," Grandparents were ordered to pay $10,000 of Mother's attorney fees at a rate of $1,000 per month until paid in full. *Id.* at ¶¶ 54, 55. Grandparents contend the trial court lacked authority to award attorney fees.

Indiana follows the "American Rule" with respect to the payment of attorney fees, which requires each party to pay his or her own attorney fees in the absence of an agreement between the parties, statutory authority, or rule to the contrary. *Fackler v. Powell*, 891 N.E.2d 1091, 1098 (Ind. Ct. App. 2008), *trans. denied*. Mother defends the trial court's order by citing to Indiana Code sections 31-17-7-1 and 34-52-1-1.

[17]  Indiana Code section 31-17-7-1(a) (the "Costs and Attorney's Fees" section of the "Family Law:  Custody and Visitation" article of the Indiana Code) allows a trial court to periodically order one party to pay the other's attorney fees in proceedings under Indiana Code chapter 31-17-2 (actions for child custody and modification of child custody orders), chapter 31-17-4 (actions for parenting time), and chapter 31-17-6 (actions for appointment of guardians ad litem and court appointed special advocates).  The language of the trial court's order, including its consideration of the parties' resources and the conclusion that Mother substantially prevailed, seems to indicate the order may have emanated from this provision and the authority it provides to award attorney fees in a parenting time action.  *See* Ind. Code § 31-17-4-3(b) (stating that in determining whether to award reasonable attorney fees in an action to enforce or modify parenting time, the court may consider whether the party asking for fees "substantially prevailed"); *In re B.J.N.*, 19 N.E.3d 765, 771 (Ind. Ct. App. 2014) (noting that in the context of a parenting time action, the trial court must consider, among other things, the resources of the parties in making an award of attorney fees).  However, this section is inapplicable to this case for two reasons:  one, this is not an action for parenting time,[3] and two, the Act is not included amongst the chapters to which section 31-17-7-1 applies.  Section 31-

---

[3] Despite there being a clear distinction between parenting time and grandparent visitation, Mother's brief uses the term "parenting time" nearly twenty times in reference to Grandparents' petition.  *See* Br. of Appellee at 12 ("The trial court was given the unenviable task of crafting a *parenting time* arrangement for these grieving Grandparents . . . .") (emphasis added).

17-7-1 does not provide authority to order a party to pay for the opposing party's fees in a grandparent visitation action.

[18] Indiana Code section 34-52-1-1(b) provides that the court in a civil action "may award attorney fees as part of the cost to the prevailing party" if it finds that either party brought an action or continued to litigate an action that is frivolous, unreasonable, or groundless or litigated the action in bad faith. With respect to an attorney fee award under section 34-52-1-1, we first review the trial court's findings of fact under the clearly erroneous standard, and we then review de novo its legal conclusions. *Knowledge A–Z, Inc. v. Sentry Ins.*, 857 N.E.2d 411, 423 (Ind. Ct. App. 2006), *trans. denied*. We review the trial court's decision to award attorney fees and the amount of fees under an abuse of discretion standard. *Id*. A claim is frivolous if it is made primarily to harass or maliciously injure another, if counsel is unable to make a good faith and rational argument on the merits of the claim, or if counsel is unable to support the action by a good faith and rational argument for extension, modification, or reversal of existing law. *Id*. at 424. A claim is unreasonable if, based upon the totality of the circumstances, including the law and facts known at the time of filing the claim, no reasonable attorney would consider the claim justified or worthy of litigation. *Id*. A claim is groundless if no facts exist which support the legal claim relied upon and presented by the losing party. *Id*. A claim is litigated in bad faith if the party presenting the claim is affirmatively operating with furtive design or ill will. *Id*.

[19] Here, Mother made no claim to the trial court that Grandparents' action was frivolous, unreasonable, groundless, or litigated in bad faith, and the trial court made no findings along those lines. Mother argues on appeal that Grandparents' actions since receiving Mother's October 2016 letter "support[] a conclusion that Grandparents are litigating in bad faith and are motivated by their ill will toward Mother." Br. of Appellee at 28. We acknowledge that neither party might have incurred attorney fees if Grandparents had not withdrawn themselves from the family initially or filed suit for visitation without first initiating a conversation with Mother. However, Grandparents testified they thought Mother was cutting off their relationship with T.R. when she wrote them the October 2016 letter. Under these circumstances, we cannot say that Grandparents were acting in bad faith.

[20] Moreover, section 34-52-1-1 applies only to the prevailing party. A "prevailing party" is one "who successfully prosecutes his claim or asserts his defense." *Allstate Ins. Co. v. Axsom*, 696 N.E.2d 482, 486 (Ind. Ct. App. 1998), *trans. denied*. Grandparents sought an order granting them visitation with T.R.; the trial court granted their petition. Although the trial court also imposed conditions on the visitation in accordance with Mother's wishes, we cannot say she was *the* prevailing party in this litigation. For these reasons, section 34-52-1-1 does not provide authority for an award of attorney fees in this case.

[21] In the absence of any statutory authority supporting such an award at the trial court level, the trial court erred in ordering that Grandparents pay a portion of Mother's attorney fees.

# III. Cross-Appeal: Appellate Damages

[22] Mother requests appellate attorney fees be awarded to her pursuant to Indiana Appellate Rule 66(E), which provides for the assessment of damages "if an appeal . . . is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." The discretion to award damages under this rule is limited to instances when an appeal is "permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Poulard v. LaPorte Cty. Election Bd.*, 922 N.E.2d 734, 737 (Ind. Ct. App. 2010). We use extreme restraint in exercising our power to award damages on appeal because of the potential chilling effect on the exercise of the right to appeal. *Harness v. Schmitt*, 924 N.E.2d 162, 168 (Ind. Ct. App. 2010). Therefore, we require a "strong showing . . . to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious." *Id.*

[23] Mother argues that Rule 66(E) damages are warranted because "Grandparents continue to target Mother unfairly, unnecessarily and without justification, thereby causing her to incur needless attorney fees." Br. of Appellee at 14. This is essentially a claim of substantive bad faith – "conscious wrongdoing because of dishonest purpose or moral obliquity." *Harness*, 924 N.E.2d at 168 (internal quotation omitted). As noted above, Grandparents appealed the trial court's order as improperly imposing conditions on their visitation with T.R. despite agreeing that they would undergo psychological evaluations and participate in counseling as ultimately ordered and despite the trial court clearly

indicating that they had not proven visitation was in T.R.'s best interests without psychological intervention and supervision. The trial court's order went in Grandparents' favor only because of Mother's position that a relationship between Grandparents and T.R. was important. By challenging terms to which they had previously agreed in hopes of overriding Mother's very real concerns and gaining immediate unconditional access to T.R., Grandparents not only demonstrated disregard for making decisions in T.R.'s best interests but also ran the very real risk of losing any access to him. Grandparents have frivolously and unreasonably prolonged this legal process for the prospect of little to no return.

[24] As for the trial attorney fees issue, although we have concluded there was no legal basis to award the fees, we would be remiss not to note that *both* parties filed motions in the trial court seeking payment of their attorney fees by the other side. Despite their position now, after having been ordered to pay a portion of Mother's attorney fees, Grandparents must have thought at some point that the trial court had authority to order fees in *their* favor and no doubt would have as vigorously defended that award as they now condemn it.

[25] We are cognizant of the chilling effect that an award of appellate damages can have on litigants, but we believe that Mother has shown "something more" than a lack of merit in Grandparents pursuit of this appeal. *See Harness*, 924 at 168. She has shown that Grandparents' appeal is permeated with efforts to harass and vex her and shows disregard for the true best interests of their grandson. *See Poulard*, 922 N.E.2d at 737. Moreover, Grandparents are now

contesting something they agreed to in the trial court. Therefore, an award of appellate damages in Mother's favor is appropriate, and we remand to the trial court for a determination of appellate damages to which Mother may be entitled pursuant to Appellate Rule 66(E).

# Conclusion

The trial court did not abuse its discretion in crafting a grandparent visitation order appropriate to T.R.'s best interests. There is no authority supporting the trial court's award of attorney fees to Mother, but we conclude an award of appellate damages is appropriate in this case. We therefore affirm the trial court's order in part, reverse in part, and remand for the trial court to determine the appropriate amount of appellate damages, which award may include an appropriate amount of appellate attorney fees.

Affirmed in part, reversed in part, and remanded.

Mathias, J., and Pyle, J., concur.